UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
LUCY WALKER, DARREN WALKER and
DL SYNERGY, LLC

       Plaintiffs,                   Case No.:

       -*against*-

                       **VERIFIED COMPLAINT**

                       **JURY TRIAL DEMANDED**

LWT ENTERPRISES, INC., HIGH NOON
ENTERTAINMENT, ITV AMERICA,
"JOHN DOE ENTITIES"
1-3 and "JOHN DOES" 1-3

       Defendants,
_____X

Plaintiffs, LUCY WALKER, DARREN WALKER and DL SYNERGY, LLC, through their attorneys, KEITH WHITE, PLLC. and THE LAW OFFICE OF JONATHAN M. WILLIAMS, LLC, complaining of the defendants, LWT ENTERPRISES, INC., HIGH NOON ENTERTAINMENT, ITV AMERICA, VICTORIA SNYDER, "JOHN DOE ENTITIES" 1-3 and "JOHN DOES" 1-3, upon information and belief, sets forth and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for breach of implied contract, fraudulent inducement, dilution, unfair competition, violations of General Business Law §349, breach of fiduciary duty and creating a hostile work environment.

2. Plaintiff Lucy Walker ("Lucy") and Plaintiff Darren Walker ("Darren") operate Plaintiff DL Synergy, LLC (collectively, "Plaintiffs").

3. Lucy and Darren are a married couple with deep roots in New Orleans, Louisiana.

4. Prior to 2023, the Plaintiffs pitched and appeared on a reality based show about their ties to and development of the New Orleans community to various media outlets.

5. Prior to 2023, the Plaintiffs maintained a popular presence in the New Orleans community, where they helped fix and rehabilitate homes.

6. The Defendants are all active participants in the writing, production and international broadcasting of a derivative audiovisual work, substantially similar to Plaintiffs' previous reality based show, entitled "Bargain Block" which was first aired by Defendants on June 16, 2024 (the "Violating Work").

## JURISDICTION AND VENUE

7. Plaintiff Lucy Walker is domiciled in Louisiana.

8. Plaintiff Darren Walker is domiciled in Louisiana.

9. Plaintiff DL Synergy, LLC is organized and existing under Louisiana State law and has a principal place of business in Louisiana.

10. LWT Enterprises, Inc. is a corporation duly organized and existing under New York law with a principal place of business at 420 Lexington Avenue, suite 2149, New York, New York 10170.

11. High Noon Entertainment is a corporation duly organized and existing under New York law with a principal place of business at 420 Lexington Avenue, suite 2149, New York, New York 10170.

12. ITV America is a corporation duly organized and existing under New York law with a principal place of business at 420 Lexington Avenue, suite 2149, New York, New York 10170.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and under the Court's pendant jurisdiction to hear claims arising under State and local law. Diversity jurisdiction is established in this case where Plaintiff is domiciled in Louisiana, Defendants are domiciled in New York and is doing business in New York, and the dispute is for an amount in excess of $75,000.

14. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and 1400(a) in that Defendants are subject to personal jurisdiction in the Southern District of New York by virtue of Defendants' broadcast of the Violating Work to this jurisdiction. Venue is also proper in the Southern District of New York pursuant to 42 U.S.C.A. § 2000e-5(f) as the Defendants are domiciled within the district and Defendants conducted business throughout the district.

15. It is respectfully requested that the Court assume supplemental jurisdiction over the state law claims alleged by Plaintiff.

16. The assumption of supplemental jurisdiction by the Court is authorized by 28 U.S.C. § 1367.

## ADDITIONAL PARTIES

17. Defendants "John Doe Entities" 1 - 3 are corporations, partnerships and/or limited liability companies whose identities are currently unknown, but have violated Plaintiffs' rights in collaboration with the known Defendants. The identity of these entities will become known with discovery.

18. Defendants "John Does" 1 - 3 are individuals whose identities are currently unknown, but have violated Plaintiffs' rights in collaboration with the known Defendants. The identity of these entities will become known with discovery.

## FACTUAL BACKGROUND

19. Plaintiffs Lucy and Darren Walker are a married couple who have spent a considerable amount of time rehabilitating homes in New Orleans prior to 2023.

20. As a result of the significant goodwill and cultural cache the Plaintiffs have accumulated through service to their community, Plaintiffs were featured on reality-based television for their contributions to society.

21. Consequently, Plaintiffs became a fixture in the home improvement scene in New Orleans and have developed strong and significant relationships in the home improvement and home improvement media space.

22. Defendants are the proprietors of productions that exploit and resale the stories of home improvement laborers.

23. The Defendants' business model purchases the rights to the stories told by home improvement laborers, packages those stories and sells the rights to HGTV, a network owned by Disney.

24. In 2020, Defendants discussed an opportunity for Plaintiffs to showcase their community and the rehabilitating of homes in New Orleans.

25. Since the Plaintiffs were already engaged in this important work, they agreed to engage in these discussions.

26. During these discussions, the Defendants intimated to Plaintiffs that Plaintiffs' show would be successful because it would unique and there was not another show like Plaintiffs'.

27. In the discussions between the Defendants and Plaintiffs prior to signing any contracts, the Defendants promised the Plaintiffs that if an initial network did not accept the Pilot episode, the Defendants would then take the Plaintiffs' project to streaming networks.

28. Additionally, Plaintiffs have developed a product, "Zoeys Queso," and asked Defendants if Plaintiffs would be able to advertise and feature Zoeys Queso as a product placement advertisement in the pilot episode. Defendants agreed to allow Plaintiffs to feature Zoeys Queso as a product placement advertisement in the Pilot episode.

29. Convinced that Defendants were offering a unique opportunity and that Plaintiffs' were being set up for success, the Plaintiffs agreed to contract with Defendants to shoot a pilot episode.

30. Between 2020 and 2022, Plaintiffs worked tirelessly to lay the foundation for the project with the Defendants and shoot a sizzle reel. This process included contacting relationships and obtaining resources based on the expectations set by the Defendants,

31. In August of 2022, Plaintiffs signed a contract with Defendants to be the featured starring talent on a show that featured the Plaintiffs repairing homes in New Orleans.

32. In March of 2023, Plaintiffs signed an additional agreement that further detailed how Plaintiffs would be paid from the shows they developed with Defendants.

33. While simultaneously negotiating with Plaintiffs to film and air the Plaintiffs' show on HGTV, Defendants contracted with another entity to film and air a similar show, entitled "Bargain Block."

34. While Defendants maintained a contractual relationship for a show entitled, "Bargain Block" prior to 2023, the previous iteration of "Bargain Block" was based in Detroit, Michigan. Defendants moved "Bargain Block" to New Orleans in 2023 to directly compete with Plaintiff's project.

35. At all times between 2022 and 2024, Defendants were aware that Bargain Block was substantially similar to Plaintiffs' work and that there would be substantial competition and

confusion between the two productions. Yet, Defendants decided not to disclose this conflict of interest to Plaintiffs.

36. In 2023, the Defendants contacted vendors to get substantial discounts on materials in exchange for promotional airtime on Plaintiffs' show. This conduct caused vendors to grant substantial discounts on materials because of the good name the Plaintiffs' had already established with vendors in New Orleans. However, upon information and belief, the Defendants intended to use Plaintiffs' television project as a loss-leader for Bargain Block.

37. On May 1, 2023, Plaintiffs began filming their show with Defendants and Defendants' contractors.

38. Soon after Plaintiffs began filming with Defendants, Defendants began presenting various obstacles to the success of Plaintiffs' show. Although Defendants told Plaintiffs that Plaintiffs would have editorial input on the show they were created, Defendants refused to show Plaintiffs the reasonably requested edits of the show and refused to allow Plaintiffs to contribute creatively to the look, feel and authenticity of the show.

39. While the Plaintiffs are a black man and a latin x woman, the Defendants would focus the content of the show away from the Plaintiffs personal stories and focus on stories and histories that were not cultural authentic to New Orleans.

40. Although Plaintiffs requested to see edits of the pilot episode while still in production, Defendants refused to show Plaintiffs an edit of the show until after Defendants cancelled the Plaintiffs show. When Defendants finally allowed Plaintiffs to see an edit of the show following its cancellation, the edit did not feature entertaining and compelling scenes that Plaintiffs remember filming. Additionally, Defendants did not feature Zoeys Queso in the pilot episode as previously agreed upon by Defendants.

41. Upon information and belief, Defendants intentionally made Plaintiffs show unappealing to networks as Defendants decided to move forward with the competing show, "Bargain Block."

42. Specifically, Defendants removed special and poignant moments that were filmed and instead diminished the cultural significance of black men showing care to women and children in their hometown and latin x construction workers being a source of hope in recovering communities.

43. Upon information and belief, in 2024, during the editing of Plaintiffs' show, Defendants instructed the editor of Plaintiffs' show to deliver a quick and unusable edit that was not marketable.

44. As set forth above, the Defendants had access to Plaintiffs' valuable history and community access as well as other information constituting trade secrets or otherwise confidential materials. Defendants development of the Violating Work is a violation of New York's unfair competition laws.

45. The production and publication of the Violating Work would likely cause consumer confusion and tarnish the good will and strong brand developed by the Plaintiffs over the years. Because this irreparable harm is imminent, temporary and permanent injunctive relief is warranted.

46. Apart from the statutory claims, this action involves a breach of trust and breach of fiduciary duty between the Defendants and the Plaintiffs.

47. Rather than operate in good faith with Plaintiffs, Defendants, while fully aware of Plaintiffs' years of hard and good work in New Orleans, willfully and improperly developed, produced, filmed and released the Violating Work, which was a derivative of Plaintiffs' work.

48. Adding insult to injury, after Plaintiffs committed more than three years of their lives to the development of Plaintiffs' show with Defendants and although Defendants promised Plaintiffs' that they would commit to the success of Plaintiffs' show, the Defendants canceled the Plaintiffs' show in 2024 and refused to provide Plaintiffs with a final marketable edit.

49. Upon information and belief, Defendants used the Plaintiffs, a black man and Latina women, to develop the concept for the show in New Orleans, however, only pitched the Violating Work, which featured an all-white cast. In this regard, Defendants were strategic in their wanton and willful abuse of Plaintiffs' time and disregard of Plaintiffs' cultural cache in the New Orleans community.

50. Upon information and belief, Defendants used Plaintiffs' credibility as people of color to endear themselves to the New Orleans community and then switched to a show with an an all-white cast to broadcast with HGTV.

51. This pattern of racist conduct was consistent with the behavior of the HGTV Director of Programming, Victoria Snyder. Specifically, in 2023, while Plaintiff Darren Walker described and shared shared his personal interests in self-improvement activities such as listening to audio books and learning Spanish, Snyder responded by comparing these activities with her husband's recreational marijuana use. This comment belittled Darren's interests, implying that such pursuits were unusually ambitious or not fitting his social identity.

## AS FOR A FIRST CAUSE OF ACTION

### (Breach of Implied Contract)

52. Plaintiffs restate and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

53. An implied contract existed between Plaintiffs and Defendants whereby Defendants implied that they would work exclusively with Plaintiffs to develop Plaintiffs' show.

54. Plaintiffs fully performed their obligations under the implied contract by dedicating their time, effort and resources to the development of the Plaintiffs' show.

55. Defendants, without Plaintiffs' authorization, knowledge or consent, willfully breached the implied contract by simultaneously developing the Violating Work and ultimately cancelling the Plaintiffs' show.

## AS FOR A SECOND CAUSE OF ACTION

### (Fraudulent Inducement)

56. Plaintiffs repeat and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

57. Defendants knowingly made false representations to Plaintiffs regarding their intention to work exclusively with Plaintiffs on the Plaintiffs' show.

58. Defendants made these representations with the intent to deceive and induce Plaintiffs to rely upon them.

59. Plaintiffs reasonably relied on Defendants' false representation and as a result, signed contracts with Defendants, expended significant time, resources and efforts in the development of the Plaintiffs' show.

60. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered and continues to suffer damages, including but not limited to lost opportunities, financial losses and reputational harm. Specifically, Plaintiffs' ability to work with many

neighbors in the New Orleans community has been damaged because Plaintiffs' credibility as a protector and community partner was compromised by Defendants' abuse of Plaintiffs and their community.

## AS FOR A THIRD CAUSE OF ACTION

### (Dilution)

61. Plaintiffs repeat and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

62. Defendants actions have caused dilution of Plaintiffs' brand by blurring and tarnishing its reputation and distinctiveness.

63. Defendants' development of the competing Violating Work, while purportedly working with Plaintiffs, created confusion and misled consumers, community members and industry stakeholders regarding the exclusivity and quality associated with Plaintiffs' brand.

64. Defendants' actions have resulted in a diminution of the value of Plaintiffs' brand, causing irreparable harm to their reputation and goodwill.

65. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer damages, including but not limited to lost opportunities, financial losses and reputational harm.

## AS FOR A FOURTH CAUSE OF ACTION

### (Unfair Competition)

66. Plaintiffs repeat and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

67. Plaintiffs are in the business of producing television shows and entertainment content, including reality shows and documentaries.

68. In 2022, Defendants approached Plaintiffs with the proposition of collaborating in the development of a new reality show. Defendants represented that they were interested in working with Plaintiffs to create a unique and innovative show that would showcase the talents of Plaintiffs Lucy and Darren.

69. Relying on the representations made by the Defendants, Plaintiffs entered into discussions and negotiations with the Defendants to develop the show. Plaintiffs shared their creative ideas and concepts along with proprietary information with the Defendants in good faith.

70. Unbeknownst to Plaintiffs, while representing that they were working with the Plaintiffs on the show, Defendants were concurrently developing a competing show. Defendants deliberately concealed this information from Plaintiffs and continued to engage in discussions and meetings under false pretenses.

71. Defendants intentionally misled Plaintiffs into believing that they were collaborating on a show together, when in reality, Defendants were working on a competing show behind Plaintiffs' backs. This deceptive conduct caused confusion and harm to Plaintiffs brand and reputations in the industry.

72. Eventually, Defendants informed Plaintiffs that they were cancelling the show collaboration. This abrupt termination left Plaintiffs without a show to develop and produce and caused significant personal, financial and reputational harm to Plaintiffs.

73. Defendants' actions constitute unfair competition under federal and state law by engaging in deceptive and unethical business practices that unfairly disadvantaged Plaintiffs and unjustly enriched Defendants

## AS FOR A FIFTH CAUSE OF ACTION

### (GBL 349)

74. Plaintiffs repeat and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

75. New York State General Business Law Section 349 prohibits deceptive acts and practices.

76. Subection (h) of Gen. Bus Law Section 349 provides for a private right of action including injunctive relief.

77. Defendants' production of the Violating Work is based on their intentional and willful deception of Plaintiffs.

78. Defendants production and publishing of the Violating Work has intentionally caused and will continue to cause actual deception and confusion in the State of New York.

79. Therefore, Defendants are liable to Plaintiffs for violations of GBL section 349, and the Court should award damages, treble damages, attorneys' fees and injunctive relief.

## AS FOR A SIXTH CAUSE OF ACTION

**(Breach of Fiduciary Duty/Tortious Interence)**

80. Plaintiffs repeat and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

81. Plaintiffs are the sole and lawful proprietor of all rights, title and interest in and to the copyrighted Original Work.

82. Defendants breached their fiduciary duty by failing to act in good faith and in the best interest of the Plaintiffs, causing harm and damages to the Plaintiffs.

## AS FOR A SEVENTH CAUSE OF ACTION

**(Constructive Trust )**

83. Plaintiffs repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

84. By virtue of their wrongful conduct, Defendants have illegally received money and profits that rightfully belong to Plaintiff.

85. Defendants hold the illegally received money and profits in the form of bank accounts, real property or personal property that can be located and traced.

86. Defendants hold the money and profits that they have illegally received as constructive trustees for the benefit of Plaintiff.

**WHEREFORE**, the Plaintiffs respectfully request this Court to enter a judgment against the Defendants. Accordingly, Plaintiff respectfully requests that this Court:

a. Issue a preliminary and permanent injunction against the Defendants, and all others in active concert or participation with Defendants, from further broadcast of the Violating Work;

b. Order Defendants to pay Plaintiff an amount to be determined at trial in actual damages and profits, plus interest, pursuant to 17 U.S.C. §504(b), the exact amount to be determined at trial;

c. Order Defendants to pay Plaintiff not less than $7,000,000.00;

d. Order Defendants to pay Plaintiff both the costs of this action and the reasonable attorneys' fees incurred by Plaintiff in prosecuting this action pursuant to 17 U.S.C. §505;

e. Order the imposition of a constructive trust over Defendants' profits which resulted from their dilution of Plaintiffs' brand;

  f. Order that Defendants to provide Plaintiffs a full and complete accounting of all profits obtained from their marketing, distribution, and national television broadcasting of the Violating Work and any other amounts due and owing to Plaintiffs as a result of Defendants' infringement; and

  g. Grant Plaintiffs such other and additional relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands that this proceeding be tried to a jury.

Dated: August 12, 2024

  Brooklyn, NY

          By:  /ss/Keith_White, Esq._____
             KEITH WHITE, PLLC
             JONATHAN M. WILLIAMS, LLC
             *Attorneys for Plaintiffs*
             396 Waverly Avenue
             Brooklyn, NY 11238
             718-403-9261