UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

| | | |
|---|---|---|
| LUCY WALKER, DARREN WALKER and DL SYNERGY, LLC,<br><br>Plaintiffs,<br><br>- against -<br><br>LWT ENTERPRISES, INC., HIGH NOON ENTERTAINMENT, ITV AMERICA, "JOHN DOE ENTITIES" 1-3 and "JOHN DOES" 1-3,<br><br>Defendants. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Case No. 1:24-cv-06478 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

I. THE PARTIES ..... 2

II. *BARGAIN BLOCK* ..... 3

III. PLAINTIFFS' WORK WITH DEFENDANTS ..... 3

IV. PLAINTIFFS' ALLEGATIONS ..... 5

ARGUMENT ..... 6

I. PLAINTIFFS' CLAIMS ARE BARRED BY THEIR AGREEMENTS WITH DEFENDANTS ..... 6

A. Lucy and Darren Walker Released All Claims at Issue Here ..... 6

B. DL Synergy's Claims Are Subject to Mandatory Arbitration ..... 9

C. Plaintiffs' Contracts with Defendants Preclude their Breach of Implied Contract and Constructive Trust Claims ..... 11

D. Plaintiffs' Contracts with Defendants Bar Reliance on External Statements ..... 12

II. PLAINTIFFS FAIL TO STATE A CLAIM FOR EACH CAUSE OF ACTION ..... 14

A. Plaintiffs Fail To State a Claim for Breach of Implied Contract ..... 14

B. Plaintiffs Fail To State a Claim for Fraudulent Inducement ..... 15

C. Plaintiffs Fail To State a Claim for Dilution ..... 16

D. Plaintiffs Fail To State a Claim for Unfair Competition ..... 18

E. Plaintiffs Fail To State a Claim for Deceptive Trade Practices in Violation of GBL § 349 ..... 19

F. Plaintiffs Fail To State a Claim for Breach of Fiduciary Duty ..... 20

G. Plaintiffs Fail To State a Claim for Constructive Trust ..... 21

III. THE MAJORITY OF PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT ..... 22

IV. CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*2 Broadway LLC v. Credit Suisse First Boston Mortg. Cap., LLC*,
2001 WL 410074 (S.D.N.Y. Apr. 23, 2001)....4

*Adidas Am., Inc. v. Thom Browne, Inc.*,
599 F. Supp. 3d 151 (S.D.N.Y. 2022)....18

*Adina's Jewels, Inc. v. Shashi, Inc.*,
442 F. Supp. 3d 766 (S.D.N.Y. 2020)....25

*Am. Movie Classics Co. v. Turner Ent. Co.*,
922 F. Supp. 926 (S.D.N.Y 1996) ....24

*Amy Axelrod, Inc. v. Simon & Schuster, Inc.*,
2007 WL 2412257 (S.D.N.Y. Aug. 27, 2007)....21

*Aniero Concrete Co. v. N. Y. City Constr. Auth.*,
2000 WL 863208 (S.D.N.Y. June 27, 2000) ....11

*Arciniaga v. Gen. Motors Corp.*,
460 F.3d 231 (2d Cir. 2006)....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Balder v. Sarandon*,
2023 WL 9232957 (S.D.N.Y. Dec. 18, 2023) ....21

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006)....14

*Betty, Inc. v. PepsiCo, Inc.*,
283 F. Supp. 3d 154 (S.D.N.Y. 2017)....24

*Bihag v. A&E Television Networks, LLC*,
669 F. App'x 17 (2d Cir. 2016) ....8

*Boccardi Cap. Sys, Inc. v. D.E. Shaw Laminar Portfolios, LLC*,
2009 WL 362118 (S.D.N.Y. Feb. 9, 2009), *aff'd*, 355 F. App'x 516 (2d Cir. 2009)....21

*Boccardi Cap. Sys, Inc. v. D.E. Shaw Laminar Portfolios, LLC*,
355 F. App'x 516 (2d Cir. 2009) ....11, 12

*Brand v. Brand*,
811 F.2d 74 (2d Cir. 1987)....................21

*Brandr Grp. v. Port Auth. of N.Y. & N.J.*,
2020 WL 1489802 (S.D.N.Y. Mar. 26, 2020)....................14

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004)....................23

*Chau v. Lewis*,
771 F.3d 118 (2d Cir. 2014)....................7

*Ciaramella v. Reader's Digest Ass'n*,
131 F.3d 320 (2d Cir. 1997)....................11

*Cohen v. Avanade, Inc.*,
874 F. Supp. 2d 315 (S.D.N.Y. 2012)....................16

*Consorcio Prodpipe, S.A. de C.V. v. Vinci, S.A.*,
544 F. Supp. 2d 178 (S.D.N.Y. 2008)....................13

*Crigger v. Fahnestock & Co.*,
443 F.3d 230 (2d Cir. 2006)....................15

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................10

*DigitAlb, Sh.A v. Setplex, LLC*,
284 F. Supp. 3d 547 (S.D.N.Y. 2018)....................16, 18

*Elements/Jill Schwartz, Inc. v. Gloriosa Co.*,
2002 WL 1492197 (S.D.N.Y. July 15, 2002)....................17

*Eyal R.D. Corp. v. Jewelex New York, Ltd.*,
784 F. Supp. 2d 441 (S.D.N.Y. 2011)....................19

*Faulkner v. Arista Records LLC*,
602 F. Supp. 2d 470 (S.D.N.Y. 2009)....................21

*Forest Park Pictures v. Universal TV Network, Inc.*,
683 F.3d 424 (2d Cir. 2012)....................23

*Gym Door Repairs v. Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016)....................19

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
246 F.3d 219 (2d Cir. 2001)....................10

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
2004 WL 305809 (S.D.N.Y. Feb. 18, 2004)....................3

*In re Weis Secs., Inc.*,
605 F.2d 590 (2d Cir. 1978)....................22

*Interpharm, Inc. v. Wells Fargo Bank, Nat'l. Ass'n*,
655 F.3d 136 (2d Cir. 2011)....................7

*Jackson v. Roberts*,
972 F.3d 25 (2d Cir. 2020)....................23

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004)....................10

*John Street Leasehold LLC v. FDIC*,
1998 WL 411328 (S.D.N.Y. July 22, 1998), *aff'd*, 196 F.3d 379 (2d Cir. 1999)....................15

*Johnson v. Arista Holding, Inc.*,
2006 WL 3511894 (S.D.N.Y. 2006)....................24

*Johnson v. Nextel Commc'ns, Inc.*,
660 F.3d 131 (2d Cir. 2011)....................20

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*,
418 F. Supp. 2d 305 (S.D.N.Y. 2005)....................17

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
67 F.3d 20 (2d Cir. 1995)....................10

*Logfret, Inc. v. Gerber Fin., Inc.*,
559 F. Supp. 3d 348 (S.D.N.Y. 2021)....................12

*MacDiarmid v. Ing Bank N.V.*,
2003 WL 41995 (S.D.N.Y. Jan. 6, 2003) ....................12

*Mason v. AmTrust Fin. Servs., Inc.*,
2020 WL 1330688 (S.D.N.Y. Mat. 23, 2020), *aff'd*, 848 F. App'x 447 (2d Cir. 2020) ....................14

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000)....................19, 20

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
875 F.2d 1026 (2d Cir. 1989)....................17

*Melendez v. Sirius XM Radio, Inc.*,
50 F.4th 294 (2d Cir. 2022) ....................23

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)....................15

*Montgomery v. NBC Television*,
833 F. App'x 361 (2d Cir. 2020) ....................22

*Moore v. Cohen*,
2022 WL 2525722 (2d Cir. July 7, 2002)....................12

*Moore v. Cohen*,
548 F. Supp. 3d 330 (S.D.N.Y. 2021), *aff'd*, 2022 WL 2525722 (2d Cir. July 7, 2022) ..........9

*New World Solutions, Inc. v. NameMedia, Inc.*,
150 F. Supp. 3d 287 (S.D.N.Y. 2015)....................17

*Northern Shipping Funds I, LLC v. Icon Cap. Corp.*,
921 F. Supp. 2d 94 (S.D.N.Y. 2013)....................20

*NYcityVan, LLC v. Thomas*,
501 F. Supp. 3d 145 (E.D.N.Y. 2020) ....................19

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
153 F. Supp. 3d 628 (S.D.N.Y. 2015)....................3

*Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*,
554 F. Supp. 3d 568 (S.D.N.Y. 2021)....................16

*Plasticware LLC v. Flint Hill Re., LP*,
852 F. Supp. 2d 398 (S.D.N.Y. 2012)....................20

*Psenicska v. Twentieth Century Fox Film Corp.*,
2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008)....................4, 7, 8

*Sackin v. TransPerfect Global, Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017)....................14

*Saeed v. Kreutz*,
606 F. App'x 595 (2d Cir. 2015) ....................11

*Sara Designs, Inc. v. A Classic Time Watch Co.*,
234 F. Supp. 3d 548 (S.D.N.Y. 2017)....................17

*Schlenger v. Fid. Emp'r Servs. Co.*,
785 F. Supp. 2d 317 (S.D.N.Y. 2011)....................16

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
992 F. Supp. 378 (S.D.N.Y. 1998) ....................2, 10, 13, 18

*Shapiro v. NFGTV, Inc.*,
2018 WL 2127806 (S.D.N.Y. Feb. 9, 2018).........................................................9, 13

*Shepard v. European Pressphoto Agency*,
291 F. Supp. 3d 465 (S.D.N.Y. 2017).........................................................................24

*Spencer-Smith v. Ehrlich*,
2024 WL 709291 (S.D.N.Y. Feb. 21, 2024)................................................................20

*Spinelli v. NFL*,
903 F.3d 185 (2d Cir. 2018)...........................................................................................21

*Stadt v. Fox News Network LLC*,
719 F. Supp. 2d 312 (S.D.N.Y. 2010).........................................................................20

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010).............................................................................................17

*United States v. Am. Soc'y of Composers*,
627 F.3d 64 (2d Cir. 2010).............................................................................................22

*Usach v. Tikhman*,
2011 WL 6106542 (S.D.N.Y. Dec. 7, 2011) ................................................................13

*Van Brunt v. Rauschenberg*,
799 F. Supp. 1467 (S.D.N.Y. 1992)...............................................................................22

*WNET v. Aero, Inc.*,
871 F. Supp. 2d 281 (S.D.N.Y. 2012).........................................................................25

*Wolstenholme v. Hirst*,
271 F. Supp. 3d 625 (S.D.N.Y. 2017).........................................................................25

**State Cases**

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
17 N.Y.3d 269 (2011) ......................................................................................................13

*Gelbman v. Valleycrest Prods., Ltd.*,
189 Misc. 2d 403 (Sup. Ct. N.Y. Cnty. 2001) .................................................................8

*Info. Scis., Inc. v. Mohawk Data Sci. Corp.*,
43 N.Y.2d 918 (1978) ...............................................................................................13, 14

*Klapper v. Graziano*,
129 A.D.3d 674 (2d Dep't 2015)......................................................................................8

*Klapper v. Graziano*,
41 Misc. 3d 401 (Sup. Ct. Kings Cnty. 2013), *aff'd*, 129 A.D.3d 674 (2d Dep't 2015) ...........7

*Nizewitz v. Viacom Int'l, Inc.*,
2015 WL 3401196 (Sup. Ct. N.Y. Cty. Mar. 4, 2015) ....................8

*Shields v. Gross*,
58 N.Y.2d 338 (1983) ....................7, 8

*Shoemaker v. Discovery Commc'ns, LLC*,
57 Misc. 3d 1203(A), 66 N.Y.S.3d 655 (Sup. Ct. N.Y. Cnty. 2017)....................8

*Weil v. Johnson*,
2002 WL 31972157 (Sup. Ct. N.Y. Cnty. Sept. 27, 2002)....................8

**Federal Statutes**

9 U.S.C. § 2....................9

9 U.S.C. § 4....................10

15 U.S.C. § 1125....................16

17 U.S.C. § 106....................22, 23

17 U.S.C. § 301....................16, 22

17 U.S.C. § 504....................23

17 U.S.C. § 505....................23

28 U.S.C. § 1400....................23

**State Statutes**

General Business Law § 349.................... *passim*

**Rules**

Federal Rule of Civil Procedure 9 ....................16

Federal Rule of Civil Procedure 9(b)....................15

Defendants LWT Enterprises Inc. ("LWT", sued as "LWT Enterprises, Inc."), High Noon Productions LLC ("High Noon," sued as "High Noon Entertainment"), and ITV America Inc. ("ITV," sued as "ITV America") (collectively, "Defendants") submit this memorandum of law in support of their motion for an order dismissing the Complaint (Dkt. No. 1, "Compl.").

## PRELIMINARY STATEMENT

This lawsuit arises out of Plaintiffs' attempts to create a federal lawsuit out of a run-of-the-mill decision by a network – not a named defendant here – to pass on a pilot for a reality show. But Plaintiffs' attempts to do so are barred by the very agreements they signed, which not only release all the claims Plaintiffs have brought here, but actually make it clear that Defendants had no obligation to do anything at all with the pilot. Plaintiffs' claims are, therefore, meritless.

Specifically, Plaintiffs were cast by Defendants for a reality television show based on Plaintiffs' restoration of houses in the New Orleans area (the "Series"), intended for initial distribution on HGTV (the "Network"). Defendants first approached Plaintiffs about the concept in 2020, and subsequently entered into written agreements with them for creation of a pilot episode, as well as a potential series order – but only if requested by HGTV. Those agreements – containing integration clauses in which Plaintiffs specifically disclaimed reliance on any oral agreements with Defendants – made clear Defendants were under no obligation to produce the Series. In addition, Plaintiffs agreed in the broadest of terms to release all claims against Defendants related to creation of the Series. Over the course of multiple years, Defendants worked with Plaintiffs to produce the pilot, but the Series was not picked up by HGTV or any other network.

Separately, years before the creation of the pilot episode of the Series, Defendants' show *Bargain Block*, a program centered on renovating homes in the Detroit area, premiered on HGTV. After three successful seasons set in Detroit, a spinoff season titled *Bargain Block: New Orleans* was released on HGTV in 2024.

Apparently believing they own the concept of home renovation shows set in New Orleans, Plaintiffs filed this suit based on Defendants' production of *Bargain Block: New Orleans*. Notably, Plaintiffs do not allege – because they cannot – that *Bargain Block: New Orleans* infringes the copyright in their Series. Indeed, the agreements at issue make it clear that Defendants, not Plaintiffs, were the owners of the Series. Nor do Plaintiffs claim Defendants breached any of the written agreements between Plaintiffs and Defendants, because they did not. Rather, the Complaint asserts a laundry list of tort claims because, Plaintiffs allege, Defendants somehow implied they would work "exclusively" with Plaintiffs. These claims fail for at least three reasons. ***First,*** Plaintiffs' written agreements with Defendants bar the causes of action here, as Plaintiffs either released all claims against Defendants arising from the Series or agreed to binding arbitration of such claims. Moreover, the very existence of these agreements precludes multiple of Plaintiffs' claims here. ***Second,*** Plaintiffs fail to plead the essential elements of each of their causes of action. ***Third,*** all but two of Plaintiffs' claims are preempted by the Copyright Act. The Complaint's defects are fatal to Plaintiffs' claims, and the Court should dismiss this action with prejudice.

## BACKGROUND

### I. THE PARTIES

Plaintiffs Lucy and Darren Walker are residents of Louisiana who renovate and restore residential properties in New Orleans. Compl. ¶¶ 5, 7, 8. Plaintiff DL Synergy, LLC ("DL Synergy") is a company operated by the Walkers. *Id.* ¶ 2.

Defendant ITV is the largest independent non-scripted television producer in the United States, producing hundreds of hours of successful programming across multiple networks. Defendants ITV, LWT and High Noon are all indirect wholly-owned subsidiaries of ITV Plc.[1]

[1] *See* ITV Plc Annual Reports & Accounts 2023, https://www.itvplc.com/~/media/Files/I/ITV-PLC-V2/documents/investors/result-

## II. *BARGAIN BLOCK*

*Bargain Block* is a television series produced by High Noon that airs on HGTV. It was released in April 2021,[2] and centers on the stars of the show, Keith Bynum and Evan Thomas, buying, renovating, and designing houses in Detroit. Compl. ¶ 34. In 2024, HGTV released the first season of a spinoff series, *Bargain Block: New Orleans*, in which Bynum and Thomas restored abandoned houses in New Orleans. *Id.* ¶¶ 6, 34.

## III. PLAINTIFFS' WORK WITH DEFENDANTS

In 2020, High Noon entered into discussions with Plaintiffs Darren and Lucy Walker regarding the potential development of a home renovation reality television show centered on the Walkers renovating homes in New Orleans. Compl. ¶¶ 24-25. After reviewing footage that the Walkers provided of their previous renovation work, High Noon worked with the Walkers to create a "sizzle reel" that High Noon would use to pitch the Series to television networks. *Id.* ¶ 30. The sizzle reel was completed in 2022 – after *Bargain Block* was on air. *Id.*

In November 2022,[3] the Walkers each entered into an agreement with High Noon's affiliate LWT, "including [LWT's] parents, affiliates, and subsidiaries …, with respect to the development and production of an unscripted television pilot and/or potential series currently entitled

centre/ITV%20Plc%202023%20Annual%20Report%20and%20Accounts%20250324.pdf (last visited November 18, 2024), at 239 (listing High Noon as subsidiary), 240 (listing ITV America and LWT as subsidiaries). The Court may take judicial notice of ITV plc's annual reports on a motion to dismiss. *See*, *e.g.*, *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 643 (S.D.N.Y. 2015) (taking judicial notice of annual report, explaining that courts may judicially notice "documents that both bear on the adequacy of SEC disclosures and are public disclosure documents required by law") (citation and internal quotation marks omitted).

[2] *See* Bargain Block (TV Series 2021- ), Episode List, IMDB, https://www.law.georgetown.edu/wp-content/uploads/2022/05/Updated_Rule-18-Oct.-21-JELFCD-1.pdf (last visited Nov. 13, 2024). On a motion to dismiss, the Court may take judicial notice of the date of publication of a work. *See*, *e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig*., 2004 WL 305809, at *4 n.3 (S.D.N.Y. Feb. 18, 2004) ("The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.").

[3] The Complaint states that the Talent Agreements were signed in August 2022. Compl. ¶ 31. While they are dated August 16, 2022, they were not executed until November of that year. *See* Exs. 1 and 2.

"Renewing NOLA" (the "Talent Agreements"). Exs. 1 and 2, preamble.[4] The agreements did not "create an employment relationship, an association, agency, joint venture, or partnership between the parties or … impose any liability attributable to such a relationship upon either party." *Id.* § 24.a. To the contrary, the Talent Agreements make clear that Defendants had no obligation to the Walkers in connection with the Series, other than to pay them for services rendered:

> Nothing herein shall be deemed to obligate [LWT or its affiliates] to use [the Walkers'] services, or the results of such services, in the Series, or to produce, release or distribute the Series, or otherwise to exploit any rights granted hereunder; provided, however, that [LWT] shall remain obligated to pay to [the Walkers] any compensation accrued end payable to [them] hereunder, subject to any contingencies contained herein.

*Id.* § 22; *see also id.* § 17 (providing that the Walkers' services in connection with the series constitute a "work for hire" of which LWT is the author, and that LWT may use the work "in any manner [LWT] may determine, in [LWT's] sole discretion"). And crucially, the Walkers each agreed to release the very claims they have brought in this action. Specifically, they agreed to:

> irrevocably release Producer and the Network, all other persons connected with the Series including, without limitation, all sponsors and advertisers of the Series and any other participants in the Series and their respective parents, subsidiaries, affiliates, licensees, successors and assigns, directors, officers, employees, agents, contractors, partners, shareholders, representatives, and members of each of the foregoing (collectively, "Released Parties") from any and all claims, actions, damages, liabilities, losses, costs, and expenses (including reasonable outside attorneys' fees and costs) arising out of or resulting from Artist's participation in the Series and/or services rendered in connection therewith (whether caused by negligence or otherwise), incorporating, without any limitation, any allegations relating to invasion of privacy, libel, slander, defamation, false light, personal

---

[4] On a motion to dismiss, "courts may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" *Psenicska v. Twentieth Century Fox Film Corp.,* 2008 WL 4185752, at *4 (S.D.N.Y. Sept. 3, 2008), (quoting *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000), *aff'd* 409 F. App'x 368 (2d Cir. 2009). Here, the Complaint directly references the Talent Agreements (Compl. ¶ 31) as well as the March 2023 agreement between DL Synergy and LWT (the "Contractor Agreement") (*id.* ¶ 32), and Plaintiffs' allegation that they were fraudulently induced to enter into those agreements is central to one of their causes of action. *See* Compl. ¶¶ 56-60. The Court may therefore consider the agreements at this stage of litigation. *See, e.g.*, *Psenicska*, 2008 WL 4185752, at *4 (considering releases signed by plaintiffs on motions to dismiss); *2 Broadway LLC v. Credit Suisse First Boston Mortg. Cap., LLC*, 2001 WL 410074, at *5 (S.D.N.Y. Apr. 23, 2001) (considering releases not attached to the complaint on a motion to dismiss because "the Complaint explicitly references them").

> injury, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of right of publicity and/or personality, violation of trademark rights, travel to and from set/location, or copyright infringement (collectively, "Released Claims").

*Id.* § 20. The Talent Agreements "contain[] the full and complete understanding between the parties with reference to the subject matter hereof, [and] supersede[] all prior or contemporaneous written or oral agreements and understandings pertaining thereto." *Id.* § 32.

In March 2023, DL Synergy – Plaintiffs' construction company – entered into the Contractor Agreement with LWT "including its parents, affiliates, and subsidiaries," relating to DL Synergy's "construction services, including, without limitation, project management, construction oversight, design and scheduling services, in connection with projects at certain properties … as they relate to the unscripted television program currently entitled 'Renewing Nola.'" Ex. 3, preamble. Like the Talent Agreements, the Contractor Agreement provides that DL Synergy "is not an employee or agent of [LWT] for any purpose" (*id.* § 15), that all of its work in connection with the Series constitutes a work for hire for LWT (*id.* § 6), and that LWT "is [not] required to use or exercise any of [its] rights granted herein" and "may, at any time, decide not to use DL Synergy in connection with the [Series]." *Id.* § 8. And it provides that

> "[i]f any controversy or claim arising out of or relating to this contract, including the scope or applicability of this Agreement to arbitrate, or the breach of any term hereof, cannot be settled through direct discussions, the parties agree to endeavor to settle the controversy or claim by binding confidential arbitration."

*Id.*, § 18. DL Synergy agreed that it "d[id] not rely upon any previous or contemporaneous written, oral or implied statements, inducements or understandings of any kind whatsoever." *Id.* § 21.

## IV. PLAINTIFF'S ALLEGATIONS

The crux of Plaintiffs' allegations is that, while working with Plaintiffs on the Series, Defendants were simultaneously developing a similar show in *Bargain Block: New Orleans*. Based on vaguely pled interactions between Plaintiffs and Defendants, which are all contradicted

by the actual agreements between the parties, Plaintiffs bring a scattershot of claims seeking recovery for the fact that the Series failed while *Bargain Block: New Orleans* succeeded. Specifically, the Complaint asserts causes of action for breach of implied contract, fraudulent inducement, dilution, unfair competition, "GBL 349," "breach of fiduciary duty/tortious interference," and constructive trust. None of these claims can survive this motion.

**ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## I. PLAINTIFFS' CLAIMS ARE BARRED BY THEIR AGREEMENTS WITH DEFENDANTS

Plaintiffs' Complaint must be dismissed in its entirety because their agreements with Defendants bar each of their claims. Both Lucy Walker and Darren Walker signed agreements releasing any claims against Defendants arising from their participation in the Series, while the contract governing DL Synergy's services in connection with the show included an agreement to submit any disagreement arising out of the contract to binding arbitration. In addition, the very existence of these contracts precludes Plaintiffs' implied contract and constructive trust claims.

### A. Lucy and Darren Walker Released All Claims at Issue Here

Lucy and Darren Walker's claims fail because the agreements governing their participation in the Series contain an "explicit waiver clause that on its face prevents Plaintiffs from bringing

[this] … action[]." *Psenicska*, 2008 WL 4185752 at *4.[5] Specifically, the Walkers each entered into a Talent Agreement with LWT and its affiliates that released in broad terms any causes of action "arising out of or resulting from [their] participation in the Series and/or services rendered in connection therewith." *See supra* at 4. And the releases covered claims against LWT and its affiliates, along with "all other persons connected with the Series" and "any other participants in the Series," as well as such parties' parents, subsidiaries, and affiliates, among others. *Cf. Klapper v. Graziano*, 41 Misc. 3d 401, 408-09 (Sup. Ct. Kings Cnty. 2013), *aff'd*, 129 A.D.3d 674, 676 (2d Dep't 2015) (applying release to dismiss claims arising from plaintiff's appearance on television show, where "[t]he clear intent of the Appearance Release was to release from liability Left/Right, Inc., and those acting with it or on its behalf to produce the reality show").

"Under New York law … 'a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'" *Interpharm, Inc. v. Wells Fargo Bank, Nat'l. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (quoting *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011)). For decades, New York courts have repeatedly dismissed claims at the earliest stage of litigation based on contractual provisions like the one here, in which participants in entertainment productions release claims against the producers and their affiliates as a condition of participation.

In *Shields v. Gross*, model Brooke Shields sued over publication of nude photos taken when she was ten years old. 58 N.Y.2d 338 (1983). Shields argued that as an adult she should be allowed to disaffirm the waiver agreement her mother had signed on her behalf. The court, however, held

---

[5] This action is governed by New York law. To begin with, the Complaint assumes as much by bringing multiple claims under New York law. *See* Compl. ¶¶ 66-73 (claim for unfair competition; *cf. id.* ¶ 44, alleging Defendants violated New York's unfair competition laws); *id.* ¶¶ 74-79 (claim under GBL § 349). *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (parties' assumption in their papers that New York law controls is sufficient to establish choice of law). In addition, both the Talent Agreements and the Contractor Agreement, contain New York choice of law clauses. *See* Exs. 1 and 2 § 32; Ex. 3 § 21.

the waiver was "valid and enforceable" and barred her action. *Id.* at 343-45. Thus, even in a case implicating the *welfare of children*, New York's highest court still held an unambiguous waiver of claims must be enforced. And since *Shields*, New York courts have strictly enforced release clauses in media and entertainment agreements. As the Appellate Division explained, such agreements "are commonly used in the entertainment industry, are enforceable and should not lightly be set aside." *Klapper v. Graziano*, 129 A.D.3d 674, 675 (2d Dep't 2015); *see also Shoemaker v. Discovery Commc'ns, LLC*, 57 Misc. 3d 1203(A), at *3, 66 N.Y.S.3d 655 (Sup. Ct. N.Y. Cnty. 2017) (plaintiffs "clearly waived their right to bring th[e] action and [we]re precluded from doing so" by terms of appearance releases, and noting that "courts have consistently upheld such releases and agreements in similar circumstances"); *Nizewitz v. Viacom Int'l, Inc.*, 2015 WL 3401196 (Sup. Ct. N.Y. Cty. Mar. 4, 2015) (dismissing claim from participant in reality show based on release in appearance agreement); *Weil v. Johnson*, 2002 WL 31972157 (Sup. Ct. N.Y. Cnty. Sept. 27, 2002) (denying motion to enjoin release of documentary in light of agreement signed by plaintiff); *Gelbman v. Valleycrest Prods., Ltd.*, 189 Misc. 2d 403 (Sup. Ct. N.Y. Cnty. 2001) (dismissing claims from game show contestant who had signed appearance release).

Courts in this Circuit are fully in accord. In *Bihag v. A&E Television Networks, LLC*, the Second Circuit addressed claims brought by a participant on a reality show who had executed an appearance agreement containing release language similar to that in the Talent Agreements here. 669 F. App'x 17, 18 (2d Cir. 2016). It did not hesitate to affirm dismissal of the lawsuit on the basis that the plaintiff's waiver of "any and all claims" was "clear, broad, and dispositive." *Id.* at 18. This followed a decision in which the Second Circuit affirmed the dismissal of claims by individuals who signed a broad release, this time relating to the mock documentary *Borat*, finding their releases prevented them from asserting their claims. *Psenicska*, 409 F. App'x at 371-72,

*aff'g*, 2008 WL 4185752. And subsequent district court decisions have confirmed the preclusive effect of agreements like the ones at issue here. *See*, *e.g.*, *Shapiro v. NFGTV, Inc.*, 2018 WL 2127806, at *7 (S.D.N.Y. Feb. 9, 2018) ("The 'clear, broad, and dispositive[ ]' language used in the release agreed to by Plaintiff bars Plaintiff from asserting any claims related to her participation in the Program, including those involving fraud.") (quoting *Bihag*, 669 F. App'x at 18); *Moore v. Cohen*, 548 F. Supp. 3d 330, 342 (S.D.N.Y. 2021) (dismissing claims where plaintiff signed a release that "clearly and unambiguously encompasses the claims brought by [plaintiff]," and observing that "courts routinely enforce similar, if not broader, releases") (internal quotation marks and alterations omitted), *aff'd*, 2022 WL 2525722 (2d Cir. July 7, 2022).

In this case, all of Plaintiffs' causes of action allegedly arise from Plaintiffs' participation in the series based on alleged agreements or representations made during the course of their work. The Walkers' claims thus arise directly from their "participation in the Series and/or services rendered in connection therewith" – precisely what the Talent Agreements released.[6]

**B. DL Synergy's Claims Are Subject to Mandatory Arbitration**

The Contractor Agreement mandates that the Court compel DL Synergy to arbitrate its claims against Defendants. The Federal Arbitration Act provides that an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It reflects "a strong federal policy favoring arbitration

[6] *See* Compl. ¶¶ 52-55 (implied contract claim based on alleged agreement to develop the Series and Plaintiffs' performance of work on the Series under the agreement); *id.* ¶¶ 56-60 (fraudulent inducement claim based on alleged false representations regarding development of the Series and Plaintiffs' work on the Series in reliance on them); *id.* ¶¶ 61-65 (dilution claim based on allegedly developing similar program while working with Plaintiffs on the Series and causing confusion between *Bargain Block: New Orleans* and the Series); *id.* ¶¶ 66-73 (unfair competition claim based on allegedly misleading Plaintiffs regarding collaboration on the Series and Plaintiffs' sharing ideas and concepts for the Series with Defendants); *id.* ¶¶ 74-79 (GBL § 349 claim based on alleged deception of Plaintiffs in the course of work on the Series and alleged confusion between *Bargain Block: New Orleans* and the Series); *id.* ¶¶ 80-82 (breach of fiduciary duty claim based on alleged failure to act in good faith towards Plaintiffs while working with them on the Series); *id.* ¶¶ 83-86 (constructive trust claim based on allegation Defendants' profits rightfully belong to Plaintiffs as a result of their participation in the Series).

as an alternative means of dispute resolution." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (citation and internal quotation marks omitted). A court must compel arbitration where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). When an arbitration provision satisfies both conditions, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

That is the case here. *First*, all that is necessary to establish an agreement to arbitrate is an agreement, signed by the plaintiff, containing an arbitration provision. *See Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998). Here, the Contractor Agreement is between DL Synergy and LWT, "including its parents, affiliates, and subsidiaries" such as High Noon and ITV. *See supra* at 5. The agreement was executed by DL Synergy, and provides that the parties will seek to resolve "any controversy or claim arising out of or relating to this contract" through "binding and confidential arbitration" in New York. *See supra* at 5. This unequivocal language establishes the parties' agreement to arbitrate.

*Second*, DL Synergy's claims fall squarely within the scope of the arbitration provision. As a matter of contract law, the scope of an arbitration agreement is determined by the intent of the parties, with intent "broadly construed" such that "arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20,

27 (2d Cir. 1995) (internal quotation marks and citations omitted). Rather than providing "positive assurance" that the arbitration provision is not susceptible of an interpretation encompassing the present dispute, the plain language of the agreement demonstrates the parties' intent to arbitrate the claims DL Synergy attempts to bring here. The Contractor Agreement concerns DL Synergy's provision of services in connection with the Series, and provides that DL Synergy will seek to resolve "any controversy or claim arising out of or relating to this contract" through binding arbitration. *See supra* at 5. All of DL Synergy' claims are based on its participation in the Series, and therefore arise out of or relate to the Contractor Agreement. They are subject to arbitration.

**C. Plaintiffs' Contracts with Defendants Preclude their Breach of Implied Contract and Constructive Trust Claims**

Even if the Talent Agreements and the Contractor Agreement did not contain specific clauses barring Plaintiffs' claims (which they do), the mere existence of these agreements precludes Plaintiffs' claims for breach of implied contract and for imposition of a constructive trust. "[U]nder New York law '[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved.'" *Saeed v. Kreutz*, 606 F. App'x 595, 597 (2d Cir. 2015) (quoting *Julien J. Studley, Inc. v. N. Y. News, Inc.*, 70 N.Y.2d 628, 629 (1987)). That is because the existence of express agreements on the same subject as the alleged implied contract "belies any reasonable notion that the parties intended to be bound merely by their preliminary agreement or their actions." *Aniero Concrete Co. v. N. Y. City Constr. Auth.*, 2000 WL 863208, at *5 (S.D.N.Y. June 27, 2000). And this principle applies especially strongly where, as here, the written agreement contains a merger clause stating that it constitutes the entire agreement between the parties. *See Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 324 (2d Cir. 1997). Similarly, a constructive trust claim is barred where a written agreement covers the subject matter. *Boccardi Cap. Sys, Inc. v. D.E. Shaw Laminar Portfolios, LLC*, 355 F. App'x 516, 519-20 (2d Cir. 2009).

Here Plaintiffs claim Defendants breached a contract relating to the development of the Series. *See* Compl. ¶¶ 57-60. And their constructive trust claim is based on Defendants' alleged wrongful conduct in connection with the development of the Series. Compl. ¶¶ 84-86. In other words, both claims fall squarely within the subject matter of the Talent Agreements and the Contractor Agreement, and are therefore barred. *Boccardi*, 355 F. App'x at 519-20.

**D. Plaintiffs' Contracts with Defendants Bar Reliance on External Statements**

To the extent Plaintiffs claim that the releases in the Talent Agreements or the arbitration clause in the Contractor Agreement are without effect because the Plaintiffs were fraudulently induced to sign the agreements (Compl. ¶¶ 56-60), that argument fails.

*First*, far from supporting a promise by Defendants to work exclusively with the Walkers, the Talent Agreements directly contradict such an obligation by making clear that "nothing [in the agreements] shall be deemed to obligate [LWT] to use [the Walkers'] services, or the results of such services, in the Series, or to produce, release or distribute the Series." *See supra* at 4; *see also supra* at 5 (similar provision in Contractor Agreement). Where an agreement contains a merger clause and the alleged representation on which the plaintiff claims to have relied is directly contradicted by terms of the agreement, no claim for fraudulent inducement will lie. *See, e.g.*, *Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 366 (S.D.N.Y. 2021) (dismissing fraudulent inducement claim because "it was not reasonable for [plaintiff] to rely on pre-contractual representations when they were contradicted by the Loan Agreement, which included a merger clause"); *MacDiarmid v. Ing Bank N.V.*, 2003 WL 41995, at *3 (S.D.N.Y. Jan. 6, 2003) (same). In such cases, the terms of the contract "destroy[] the allegations in [Plaintiffs'] complaint that the agreement was executed in reliance upon these contrary oral representations." *Moore v. Cohen*, 2022 WL 2525722, at *2 (2d Cir. July 7, 2002) (quoting *Danaan Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (1959)).

*Second*, the law is clear that broad releases like those in the Talent Agreements encompass fraudulent inducement claims that fall within their scope. *See, e.g.*, *Consorcio Prodpipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 191-92 (S.D.N.Y. 2008) (applying release provisions to dismiss claims, notwithstanding allegation that plaintiffs were fraudulently induced to enter into agreements containing releases); *Centro Empresarial*, 17 N.Y.3d at 276-77 (same); *Shapiro*, 2018 WL 2127806 at *8 (same); *Usach v. Tikhman*, 2011 WL 6106542, at *8 (S.D.N.Y. Dec. 7, 2011) (same). The releases may be invalidated only if Plaintiff "can identify a separate fraud from the subject of the release." *Centro Empresarial*, 17 N.Y.3d at 276.

Here, the Walkers identify no such separate fraud. To the contrary, the Complaint makes clear that the alleged misrepresentations on which the Walkers base their fraudulent inducement claim relate directly to the exact subject of the release – namely, their participation in, and services in connection with, the Series. *See* Compl. ¶ 57 (alleging Defendants induced Plaintiffs to enter into agreements by means of misrepresentations regarding "their intention to work exclusively with Plaintiffs on the Plaintiffs' show"). As a result, the Walkers' "fraudulent inducement claim relates directly to the underlying agreement and release provision that formed the basis for [their] participation in the [p]rogram." *Shapiro*, 2018 WL 2127806 at *8. It is therefore "deemed released and cannot serve as a basis to void the release." *Id.* (quoting *Consorcio*, 544 F. Supp. 2d at 192).

*Third*, DL Synergy cannot sidestep the arbitration provision of the Contractor Agreement by alleging that Defendants fraudulently induced it to enter into the Contractor Agreement. "[W]here the parties have agreed to a broad arbitration clause, the issue of fraud in the inducement is one for the arbitrator." *Info. Scis., Inc. v. Mohawk Data Sci. Corp.*, 43 N.Y.2d 918, 920 (1978). And arbitration clauses are considered broad where, as here, they cover "all disputes arising out of the contract." *Id.* DL Synergy must be compelled to arbitrate its claims against Defendants.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR EACH CAUSE OF ACTION

Even if Plaintiffs' claims were not barred by their agreements with Defendants, they should still be dismissed because Plaintiffs fail to plead each cause of action adequately.

### A. Plaintiffs Fail To State a Claim for Breach of Implied Contract

"An implied contract, like an express contract, requires consideration, mutual assent, legal capacity and legal subject matter." *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017). "The terms of an implied-in-fact contract turn on the conduct of the parties." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006). "[T]o survive a motion to dismiss a plaintiff must allege sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract." *Brandr Grp. v. Port Auth. of N.Y. & N.J.*, 2020 WL 1489802, at *2 (S.D.N.Y. Mar. 26, 2020) (citation and internal quotation marks omitted). Plaintiffs have not pled anything of the sort. Rather, they vaguely claim that "[a]n implied contract existed between Plaintiffs and Defendants whereby Defendants implied that they would work exclusively with Plaintiffs to develop Plaintiffs' show," and that Defendants breached that agreement by developing *Bargain Block: New Orleans*. Compl. ¶¶ 53-55. Setting aside that Plaintiffs' written agreements with Defendants bar this claim for the reasons explained above, it fails for at least two reasons.

*First*, Plaintiffs allege only that Defendants somehow "implied" they would work exclusively with Plaintiffs – but never plead Defendants made any specific representation to that effect. A conclusory allegation of an implied agreement, without any factual allegations to support it, cannot survive dismissal. *See, e.g.*, *Mason v. AmTrust Fin. Servs., Inc.*, 2020 WL 1330688, at *4 (S.D.N.Y. Mat. 23, 2020) (dismissing implied contract claim where complaint "d[id] not describe any conduct on the part of [defendant] that is consistent with" alleged implied agreement), *aff'd*, 848 F. App'x 447 (2d Cir. 2020).

*Second*, to proceed on an implied contract claim the terms must be defined and clear. *See, e.g.*, *John Street Leasehold LLC v. FDIC*, 1998 WL 411328, at *5 (S.D.N.Y. July 22, 1998) (dismissing claim where terms of the purported contract were "fatally vague and indefinite," such that "there is no way to ascertain the parties' intent sufficient to enforce the purported agreement"), *aff'd*, 196 F.3d 379 (2d Cir. 1999). But Defendants' supposed agreement to "work exclusively with Plaintiffs to develop their show," is anything but defined and clear. Of course, production companies like the Defendants must work on multiple shows at the same time, and Defendants could not have agreed to drop all other shows on their roster. But Plaintiffs offer no more clues as to the scope of this "exclusivity" provision. Did the parties agree that Defendants would refrain from developing any reality series in New Orleans, or shows involving home renovations in general? It is not at all clear what the alleged agreement here was, and the claim must fail.

**B. Plaintiffs Fail To State a Claim for Fraudulent Inducement**

To state a claim for fraudulent inducement, Plaintiffs must allege (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity, and (3) intent to defraud; (4) reasonable reliance by the Plaintiffs; and (5) resulting damages. *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Fraudulent inducement claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and require the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Plaintiffs fall far short of this standard. Plaintiffs' claim is based on the conclusory assertion that Defendants (without identifying which one) "made false representations to Plaintiffs regarding their intention to work exclusively with Plaintiffs on the Plaintiffs' show." Compl. ¶ 57. The Complaint does not "specify" a single actual statement or identify where, when, and by whom

that statement was made – much less explain how it was false. This failure mandates dismissal. *See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 324 (S.D.N.Y. 2012) (dismissing fraudulent inducement claim where plaintiff gave "only a general description of the statements that he contends were fraudulent and fail[ed] altogether to identify where and when the statements were made") (citation and internal quotation marks omitted); *Schlenger v. Fid. Emp'r Servs. Co.*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) (dismissing fraudulent inducement claim, where "Plaintiff's failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9") (collecting cases); *Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 594-95 (S.D.N.Y. 2021) (dismissing fraudulent inducement claim where plaintiff failed to allege statement was false).

**C. Plaintiffs Fail To State a Claim for Dilution**

The Complaint alleges Defendants' development of *Bargain Block: New Orleans* "caused dilution of Plaintiffs' brand by blurring and tarnishing its reputation and distinctiveness" (Compl. ¶ 62), but does not specify whether Plaintiffs bring their dilution claim under federal or state law. A claim for dilution under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)) requires Plaintiffs to allege (1) that they possess a famous mark; (2) that defendant used in commerce; (3) the defendant used the mark after the mark was famous; and (4) the defendant's use of the mark is likely to dilute its quality by blurring or tarnishment. *DigitAlb, Sh.A v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018) (citations omitted). To plead dilution under GBL § 360-L, Plaintiff must allege (1) that they possess a strong mark; and (2) a likelihood of dilution by either blurring or tarnishment. *New World Solutions, Inc. v. NameMedia, Inc.*, 150 F. Supp. 3d 287, 328 (S.D.N.Y. 2015). In addition, a dilution claim is only permitted under New York law if Defendants' and Plaintiffs' marks are substantially similar. *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 111 (2d Cir. 2010); *see also Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,

875 F.2d 1026, 1029 (2d Cir. 1989) ("[T]he similarity [between the marks] must be substantial before the doctrine of dilution may be applied."). Whether it's a state or federal claim, Plaintiffs' dilution claim should be dismissed.

The dilution claim falls at the first hurdle under both federal and state law because Plaintiffs have not alleged that they possess any trademark, let alone a strong or famous one. The Complaint makes vague references to Plaintiffs' "brand" (Compl. ¶¶ 45, 62-64), but does not explain anywhere, even in general terms, what that brand allegedly consists of, or how it qualifies as a trademark. That alone requires dismissal of the dilution claim. *See*, *e.g.*, *Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, 2002 WL 1492197, at *5-7 (S.D.N.Y. July 15, 2002) (dismissing trade dress dilution claims under Lanham Act and New York law for failure to adequately identify trade dress at issue); *Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 557 (S.D.N.Y. 2017) (dismissing federal and state dilution claims for failure to allege description or appearance of watch constituted protectible trademarks).

Any dilution claim Plaintiffs bring under GBL 360-L would also fail because the Complaint does not identify *Defendants*' mark either, much less plead that it is substantially similar to the Plaintiffs' unspecified "mark." *See Sara Designs*, 234 F. Supp. 3d at 557 (dismissing state law dilution claim for failure to allege defendants used mark similar to plaintiff's); *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 313 (S.D.N.Y. 2005) (same). Moreover, to the extent Plaintiffs' dilution claim is based on the assertion that *Bargain Block: New Orleans* is similar to their Series, that is a copyright claim and is preempted. *See infra* at 22-25.[7]

[7] In any event, the Complaint is devoid of any allegations that the two works are substantially similar. Indeed, the only nonconclusory fact Plaintiffs allege about *Bargain Block* is that it was previously based in Detroit, but moved to New Orleans in 2023. *See* Compl. ¶ 34.

Finally, to the extent Plaintiffs bring their dilution claim under the Lanham Act, it fails because Plaintiffs fail to allege their "brand" was famous – *i.e.*, "widely recognized by the general consuming public of the United States as a designation of the source of the goods or of the mark's owner." *DigitAlb*, 284 F. Supp. 3d at 557 (citations and internal quotation marks omitted). "Dilution claims [under the Lanham Act] are restricted to marks that are 'truly famous' or so well-known that they are essentially household names, such as Coca-Cola, Nike, or Budweiser." *Id.* The Complaint contains no allegations suggesting Plaintiffs' brand – whatever it might be – achieved anything close to the required level of fame, and any Lanham Act dilution claim must be dismissed on that basis as well. *See id.* at 558 (dismissing Lanham Act claim, because "[plaintiff's] failure to plausibly allege that the symbols are famous to the general consuming public of the United States is fatal to its trademark dilution claim").

**D. Plaintiffs Fail To State a Claim for Unfair Competition**

Plaintiffs bring a claim for unfair competition "under federal and state law." Compl. ¶ 73. "[I]t is well established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law and the Lanham Act are essentially the same and may be analyzed together." *Adidas Am., Inc. v. Thom Browne, Inc.*, 599 F. Supp. 3d 151, 158 n. 3 (S.D.N.Y. 2022) (citing *Tiffany (NJ), Inc.*, 600 F.3d at 101 n.6). Both federal and state claims require the plaintiff to establish that (1) it has a valid, protectable mark; and (2) the defendant's use of it is likely to cause confusion. *Id.* at 158

Plaintiffs' unfair competition claim fails at the outset regardless of whether it is brought under the Lanham Act or New York law because, as explained above, the Complaint does not alleged that Plaintiffs have a valid, protectable mark. *See, e.g.*, *NYcityVan, LLC v. Thomas*, 501 F. Supp. 3d 145, 152 (E.D.N.Y. 2020) (dismissing New York unfair competition counterclaim where counterclaimant did not have a valid and protectable mark). Moreover, the Complaint

includes no nonconclusory facts regarding consumer confusion, and the claim should be dismissed for that reason as well. *See, e.g.*, *Gym Door Repairs v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 906 (S.D.N.Y. 2016) (dismissing state and federal unfair competition claims because plaintiffs' "conclusory allegations concerning the mere possibility of confusion do not suffice to state a claim under either federal or state law").

### E. Plaintiffs Fail To State a Claim for Deceptive Trade Practices in Violation of GBL § 349

To state a claim for deceptive trade practices Plaintiffs must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). In addition, because Section 349 is a consumer protection statute, Plaintiffs must allege that the alleged deceptive practices caused "consumer injury or harm to the public interest." *Id.* at 522 (citation omitted); *see also Eyal R.D. Corp. v. Jewelex New York, Ltd.*, 784 F. Supp. 2d 441, 449 (S.D.N.Y. 2011) ("[T]he gravamen of [a Section 349 claim] must be consumer injury or harm to the public interest.") (citation omitted). The Complaint fails to do so.

Plaintiffs actually plead that their claim is based not on injury to consumers or the public interest, but on Defendants' alleged "intentional and willful deception of *Plaintiffs*." Compl. ¶ 77 (emphasis added). But where, as here, a deceptive trade practices claim is based on "injury to [plaintiff] itself . . . as opposed to consumers," it must be dismissed. *See Eyal*, 784 F. Supp. 2d at 449–50. Nor can Plaintiffs save their claim through conclusory allegations of consumer confusion between *Bargain Block: New Orleans* and the Series, as a mere likelihood of confusion is not considered "sufficient consumer harm" to state a claim under Section 349. *See Stadt v. Fox News Network LLC,* 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010); *see also Maurizio,* 230 F.3d at 522

(plaintiff's claim that she was "denied credit and profits" as an alleged co-author of *The First Wives Club* does not allege the requisite "direct impact on the body of consumers").

### F. Plaintiffs Fail To State a Claim for Breach of Fiduciary Duty[8]

Plaintiffs' claim for breach of fiduciary duty should be dismissed because the Complaint pleads neither that Defendants owed Plaintiffs a fiduciary duty, nor that Defendants breached that duty. Under New York law, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) knowing breach of that duty; and (3) damages. *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). "[A] predicate for breach of fiduciary duty is that a fiduciary relationship existed between the parties." *Northern Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 101 (S.D.N.Y. 2013). "Fiduciary relationships are 'grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions.'" *Spencer-Smith v. Ehrlich*, 2024 WL 709291, at *6 (S.D.N.Y. Feb. 21, 2024) (quoting *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584 (2012)).

Here, the only relationship the Complaint alleges between Plaintiffs and Defendants was a contractual one for the production and development of a television series. Compl. ¶¶ 24-32. This is precisely the type of arm's-length commercial transaction courts have found not to create a fiduciary relationship. *See, e.g.*, *Balder v. Sarandon*, 2023 WL 9232957, at *11 (S.D.N.Y. Dec. 18, 2023) (no fiduciary relationship between executive producer and filmmaker); *Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 482 (S.D.N.Y. 2009) (no fiduciary relationship between record company and recording artist); *Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, 2007 WL

[8] Plaintiffs' Sixth Cause of Action is titled "Breach of Fiduciary Duty/Tortious Interference." However, the Complaint does not include even conclusory allegations of tortious interference, and Defendants have therefore interpreted this as simply a claim for breach of fiduciary duty. To the extent Plaintiffs also maintain a claim for tortious interference, it fails because the Complaint does not identify any specific contract or business relationship with which Defendants interfered. *See Plasticware LLC v. Flint Hill Re., LP*, 852 F. Supp. 2d 398, 402-04 (S.D.N.Y. 2012).

2412257, at *7 (S.D.N.Y. Aug. 27, 2007) (no fiduciary relationship between publisher and author). The Court should dismiss Plaintiffs' claim for failure to allege a fiduciary relationship. *See Spinelli v. NFL*, 903 F.3d 185, 207-08 (2d Cir. 2018) (affirming dismissal of fiduciary claim for failure to plead fiduciary relationship, where parties' relationship was an arm's-length transaction and agreements expressly stated that the parties would not be construed as agents, partners, joint venturers, employees, or legal representatives of each other).[9] This claim must be dismissed.

### G. Plaintiffs Fail To State a Claim for Constructive Trust

"To be entitled to a constructive trust under New York law, a party must establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *Brand v. Brand*, 811 F.2d 74, 77 (2d Cir. 1987). Plaintiffs' claim fails for at least two reasons.

*First*, Plaintiffs have not pled a fiduciary relationship between the parties, for the reasons explained above, and their claim must be dismissed for that reason. *See Boccardi Cap. Sys, Inc. v. D.E. Shaw Laminar Portfolios, LLC*, 2009 WL 362118, at *7 (S.D.N.Y. Feb. 9, 2009), *aff'd*, 355 F. App'x 516 (2d Cir. 2009). *Second*, the Complaint does not contain any factual allegations of a promise by Defendants (*see supra* at 14-15), or a transfer made in reliance on that promise by Defendants. *See Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1474 (S.D.N.Y. 1992) (dismissing constructive trust claim where "Plaintiff has not alleged that he transferred any property to the Defendant in reliance of a promise"); *cf. In re Weis Secs., Inc.*, 605 F.2d 590, 597

[9] Nor does the Complaint allege any other facts supporting a "higher level of trust" between Plaintiffs and Defendants giving rise to a fiduciary relationship; to the contrary, their agreements with Defendants make clear that the parties did not seek to hold each other to an elevated standard of care. *See* Exs. 1 and 2, § 24.a ("This Agreement shall not be interpreted or construed to create an employment relationship, an association, agency, joint venture, or partnership between the parties or to impose any liability attributable to such a relationship upon either party); Ex. 3 § 15 ("Contractor is not an employee or agent of Network or Producer for any purpose.").

(2d Cir. 1978) ("It is elementary .. that before a constructive trust may arise, there must be … a segregated fund or property to which the trust can attach.").

## III. THE MAJORITY OF PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT

Plaintiffs' causes of action must be dismissed for the separate reason that they are preempted by the Copyright Act, with the exception of their breach of fiduciary duty and constructive trust claims, which independently fail for the reasons explained above. Section 301 of the Copyright Act precludes any non-copyright claims that are "equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). And here, the core of Plaintiffs' claims is that Defendants injured them by producing and distributing a work that was similar to the Series – a quintessential copyright grievance. Indeed, the fundamental basis of Plaintiffs' claims in copyright law is reflected throughout the Complaint. To begin with, the Complaint is peppered with the language of copyright infringement claims: it alleges that *Bargain Block: New Orleans* is a "derivative … work" that is "substantially similar" to Plaintiffs' Series (Compl. ¶¶ 6, 35, 47), refers to *Bargain Block: New Orleans* as a "Violating Work" (*Id.* ¶ 6), and bases Plaintiffs' claims on Defendants' "broadcast" of *Bargain Block: New Orleans* (*id.* ¶ 14). *Cf.* 17 U.S.C. § 106(1) (copyright protects author's exclusive right to prepare derivative works); *Montgomery v. NBC Television*, 833 F. App'x 361, 363 (2d Cir. 2020) (copyright claim requires demonstration that defendant's work is substantially similar to plaintiff's); *United States v. Am. Soc'y of Composers*, 627 F.3d 64, 74 (2d Cir. 2010) ("television … broadcast" constitutes a public performance – one of the exclusive rights protected under the Copyright Act). The Complaint even asserts that venue is proper pursuant to 28 U.S.C. § 1400(a), the statutory provision governing venue in copyright cases. Compl. ¶ 14. And it seeks both statutory damages and attorneys' fees

under the Copyright Act. *See id.* (requesting statutory damages pursuant to 17 U.S.C. § 504(b), and attorneys' fees pursuant to 17 U.S.C. § 505).

Courts employ a two-pronged test to determine whether Section 301 preempts a claim. *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Both prongs are satisfied here. *First*, the court must decide whether the work to which the claim relates falls within the subject matter of copyright. *Id.* "[I]f the work against which the plaintiff claims rights is a … "work of authorship" within the subject matter of copyright … the plaintiff's claim is subject to the possibility of statutory preemption." *Jackson v. Roberts*, 972 F.3d 25, 42-24 (2d Cir. 2020) (internal quotation marks and alterations omitted). *Bargain Block: New Orleans* is a television series, and is therefore a "work of authorship." *See Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 430 (2d Cir. 2012).

*Second*, the court must determine whether the rights protected by the asserted claim are equivalent to any of the exclusive rights granted by the Copyright Act, *e.g.*, the rights to make copies, create derivative works, or distribute or display the work. *Forest Park Pictures*, 683 F.3d at 430; *see also* 17 U.S.C. § 106 (listing exclusive rights of copyright owner). A work will escape preemption only if the asserted claim has "extra elements that make [the claim] qualitatively different from a copyright infringement claim." *Briarpatch*, 373 F.3d at 305-06. Even where a cause of action includes an element not present in a copyright infringement claim, if that element "limits the scope of the claim but leaves its fundamental nature unaltered," the claim is not qualitatively different from one for copyright infringement and is thus preempted. *Id.* at 306; *see also Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 302 (2d Cir. 2022) ("Rather than simply performing a mechanical search for extra elements, courts must instead engage in holistic evaluation of the nature of the rights sought to be enforced and then make a determination whether

the state law action is *qualitatively* different from a copyright infringement claim.") (citations and internal quotation marks omitted).

Perhaps cognizant of the fact they do not even own the copyright in the Series, and therefore could not sue for any alleged infringement of it, Plaintiffs instead reframe their copyright claim under the guise of various contract and tort causes of action. These claims are preempted. *Betty, Inc. v. PepsiCo, Inc.*, 283 F. Supp. 3d 154, 165 (S.D.N.Y. 2017):

- Breach of implied contract: Plaintiffs allege Defendants breached an implied contract to "work exclusively" with them by developing *Bargain Block: New Orleans* (Compl. ¶¶ 53-55), because *Bargain Block: New Orleans* is allegedly "substantially similar" to the Series. Compl. ¶¶ 6, 35. But creating an unauthorized work that is substantially similar to Plaintiffs' "is conduct that the Copyright Act prohibits and for which it grants remedies," and Plaintiffs' attempt to base their breach of contract claim on it is therefore preempted. *Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465, 475 (S.D.N.Y. 2017) (dismissing breach of contract claim as preempted); *see also Am. Movie Classics Co. v. Turner Ent. Co.*, 922 F. Supp. 926, 931 (S.D.N.Y 1996) (same).
- Fraudulent inducement: Plaintiffs' claim is based on Defendants' purported promise to "work exclusively with Plaintiffs" on the Series (Compl. ¶¶ 57-60), which boils down to an alleged undertaking not to produce a work infringing on the Series. *See, e.g.*, Compl. ¶ 47 (alleging that instead of operating "in good faith," Defendants developed a work that was "a derivative of Plaintiffs' work"). This too is preempted. *See, e.g.*, *Johnson v. Arista Holding, Inc.*, 2006 WL 3511894, at *7 (S.D.N.Y. 2006) (fraudulent inducement preempted where it "d[id] no more than seek to vindicate the same rights as plaintiff's copyright claims") (citation omitted).

- Unfair competition, dilution, GBL § 349: Plaintiffs' dilution, unfair competition, and GBL § 349 claims are all based on alleged deception and confusion arising from Defendants' creation of a similar work. *See* Compl. ¶¶ 63, 71, 78. Courts have repeatedly held such claims are preempted by the Copyright Act. *See, e.g.*, *WNET v. Aero, Inc.*, 871 F. Supp. 2d 281, 292 (S.D.N.Y. 2012) ("[T]]he Second Circuit has broadly precluded unfair competition claims involving misappropriation of a plaintiff's creative works."); *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 645 (S.D.N.Y. 2017) (dilution claim based on defendants' creation and sale of work similar to plaintiff's preempted); *Adina's Jewels, Inc. v. Shashi, Inc.*, 442 F. Supp. 3d 766, 773 (S.D.N.Y. 2020) (Section 349 claim based on defendant's distribution of alleged "knock-offs" of plaintiff's works preempted).

In sum, Plaintiffs' claims for breach of implied contract, fraudulent inducement, unfair competition, dilution, and deceptive business practices under GBL § 349 are preempted under the Copyright Act and should be dismissed.

## IV. CONCLUSION

For the reasons set forth above, each of Plaintiffs' claims fails for multiple, independent reasons, and the Complaint should be dismissed with prejudice.

Dated: November 22, 2024

DAVIS WRIGHT TREMAINE LLP

By: *__/s/ Rachel F. Strom__*
Rachel F. Strom
Carl Mazurek
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 603-6414
rachelstrom@dwt.com
carlmazurek@dwt.com

*Attorneys for Defendants LWT Enterprises Inc., High Noon Productions LLC, and ITV America Inc.*