UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARREN WALKER, et al.,

                            Plaintiffs,

            -against-

LWT ENTERPRISES, INC., et al.,

                            Defendants.

24-CV-6478 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiffs Lucy and Darren Walker, a Latinx woman and Black man, and their company DL Synergy, LLC (collectively, "Plaintiffs") built a reputation in New Orleans related to their home renovation and improvement work, and were previously featured on reality television as a result. In 2020, Defendants High Noon Entertainment ("High Noon"), ITV America, and LWT Enterprises, Inc. (collectively, "Defendants") approached Plaintiffs regarding an opportunity to be on a television show that would feature home renovations in New Orleans. After some negotiations, and certain promises from Defendants—including a promise that they would submit the proposed show to streaming networks if it was not picked up by television—Plaintiffs developed a relationship with Defendants, and spent the next two years working to film a "sizzle reel" to support a pitch of the show. Plaintiffs hoped that the show would focus on their personal stories and cultural experiences. Throughout this time, the parties did not reduce any agreement to writing.

In 2022, the parties executed formal agreements regarding the proposed series. Those agreements contained various limitations clauses, and other clauses which contradicted the promises that the Defendants previously made to Plaintiffs. Regardless, Plaintiffs executed the agreements. The parties continued to work on the proposed series, and as the pilot was

developed, Plaintiffs felt they were not being given creative input as Defendants had previously promised. Ultimately, the series did not get picked up by a network, and Plaintiffs allege they were essentially used as a stalking horse while Defendants worked to create a competing show featuring similar subject matter but an all-white cast. This lawsuit followed.

Presently before the Court is Defendants' motion to dismiss. Defendants assert that the written agreements that Plaintiffs signed bar all their asserted claims, and that, in any event, the claims would fail under Rule 12(b)(6) and would otherwise be preempted by the Copyright Act. Plaintiffs disagree, insisting that the agreements were procured by fraud and are therefore not binding, and that they otherwise adequately plead each cause of action. As set forth below, the Court finds that Plaintiffs have not and cannot assert a claim for fraudulent inducement. As such, the otherwise enforceable release in the parties' agreements bar all of Plaintiffs' claims. The Court also denies Plaintiffs leave to amend given that any such amendment would be futile.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiffs Darren and Lucy Walker (together, the "Walkers"), a Black man and Latinx woman, operate DL Synergy, LLC (collectively, "Plaintiffs"), and have been rehabilitating homes in New Orleans since prior to 2023. ECF No. 1 ("Compl.") ¶¶ 19–20. Through their work, Plaintiffs have developed relationships with, and credibility in, their community. *Id.* ¶¶ 20–21. This work has included Plaintiffs being featured on reality television. *Id.* Defendants High Noon Entertainment ("High Noon"), ITV America, and LWT Enterprises, Inc. are production

companies that produce and pitch television concepts to HGTV, a network owned by Disney. *Id.* ¶¶ 22–23. Defendants are all indirect wholly-owned subsidiaries of ITV Plc. ECF No. 20 at 2.

In 2020, Defendants proposed an opportunity for Plaintiffs to be on a television show featuring their community and the rehabilitating of homes in New Orleans. *Id.* ¶¶ 24, 26, 29. During these discussions, and prior to signing any contracts, Defendants suggested that the show would be successful, and promised Plaintiffs that if an initial network did not accept the pilot episode, Defendants would then take Plaintiffs' project to streaming networks. *Id.* ¶¶ 26–27. Additionally, during these negotiations, Defendants agreed to placement of Plaintiffs' product, "Zoey's Queso," in the pilot episode. *Id.* ¶ 28. Based on these conversations and promises, Plaintiffs agreed to contract with Defendants to shoot a pilot episode. *Id.* ¶ 29.

Thereafter, between 2020 and 2022, Plaintiffs worked to "lay the foundation" for the project and create a sizzle reel with the Defendants. *Id.* ¶ 30. Although not defined in the Complaint, the Court understands that a "sizzle reel" is "a short usually flashy video used to promote a product, service, proposed project, etc." [1] This reel included Plaintiffs utilizing the relationships they built in their community. *Id.* Then, in November 2022,[2] Defendants executed

---

[1] *Sizzle Reel*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/sizzle%20reel#:~:text=%3A%0a%20short%2C%20usually%20flashy%20video,service%2C%20proposed%20project%2C%20etc, [https://perma.cc/FC7X-B8AC] (last visited September 28, 2025).

[2] The Complaint alleges that these agreements were signed in August 2022, Compl. ¶ 31. The letters do appear to have initially been dated August 16, 2022, but the agreements themselves indicate they were signed in November 2022. ECF Nos. 21-1, 21-2. "Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness." *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 365 (S.D.N.Y. 2014) (quoting *Kirkendall v. Halliburton*, 707 F.3d 173, 175 n.1 (2d Cir. 2013)).

agreements with the Walkers. ECF Nos. 21-1, 21-2 (collectively, the "Walker Agreements").[3]
These agreements contemplated that Plaintiffs would be featured on a show repairing homes in
New Orleans. Compl. ¶ 31. In March 2023, Lucy and Darren Walker, through their company DL
Synergy, LLC, executed an additional agreement with LWT Enterprises Inc., which included a
payment schedule for the pilot. ECF No. 21-3 (the "Contractor Agreement," and together with
the Walker Agreements, the "Agreements"). Each of the Agreements provided that they were to
be interpreted and construed in accordance with laws of the State of New York. ECF No. 21-1 ¶
32; ECF No. 21-2 ¶ 32; ECF No. 21-3 ¶ 21.

The Walker and Contractor Agreements are substantially identical, and contain various
provisions that relate to the instant dispute. First, each Agreement contains what is commonly
referred to as a "merger clause." This clause operates to limit what extrinsic evidence can be
used to vary, clarify, or modify the written contracts. Specifically, the Walker Agreements
provide that those Agreements "contain[] the full and complete understanding between the
parties with reference to the subject matter hereof; supersedes all prior or contemporaneous
written or oral agreements and understandings pertaining thereto, and may not be modified or
amended except by a written instrument signed by the party to be charged therewith." ECF No.
21-1 ¶ 32; ECF No. 21-2 ¶ 32. The Contractor Agreement contained a similar merger clause:

> This Agreement constitutes the entire agreement between the parties hereto. The
> Contractor represents that by entering into the Agreement, **Contractor does not**
> **rely upon any previous or contemporaneous written, oral or implied**
> **statements, inducements or understandings of any kind whatsoever**. Producer
> and Network assume no responsibility for any understanding or representations
> made by any of its officers or agents prior to execution of this Agreement unless

---

[3] The Court may properly consider these agreements because they are referenced in the
complaint. Compl. ¶¶ 31, 32; *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010*)*. Plaintiffs' attempts to avoid the substance of those agreements by not attaching them to
the complaint does not make them any less integral. *See RBS Holdings, Inc. v. Wells Fargo
Century, Inc*., 485 F. Supp. 2d 472, 477 (S.D.N.Y. 2007).

such understanding or representation is expressly set forth in this Agreement. No terms or conditions shall be binding upon Producer and Network unless agreed to in writing by Producer and Network.

ECF No. 21-3 ¶ 21 (emphasis added). The "Contractor" in the agreement is defined to be Plaintiff DL Synergy, LLC. *Id.* at 1.

Second, each of the Agreements contain "release" clauses which restrict the ability of the parties to assert claims for issues relating to or arising under the contract. The Walker Agreements provide that Lucy and Darren Walker irrevocably, and to the maximum extent permitted by law, release Defendants from "any and all claims, actions, damages, liabilities, losses, costs, and expenses . . . arising out of or resulting from [Plaintiff Lucy and Darren Walker's] participation in the Series and/or services rendered in connection therewith (whether caused by negligence or otherwise . . . ." ECF No. 21-1 ¶ 20; ECF No. 21-2 ¶ 20. The Contractor Agreement contains a similar release clause. ECF No. 21-3 ¶¶ 11–12.

Third, the Agreements contain intellectual property provisions. The Walker Agreements both specified that Plaintiff Lucy and Darren Walker's contributions would be considered as "work made for hire," meaning that Defendants would be the author of the work and automatically own all rights, title, and interests in any created works. ECF No. 21-1 ¶ 17; ECF No. 21-2 ¶ 17. The Contractor Agreement contains a similar clause which states:

> Producer solely owns and controls all rights in the Program (including, but not limited to, the copyright, trademarks and related rights therein and all extensions and renewals thereof) and all of the results and proceeds of Contractor's services shall be a "work made for hire" under applicable copyright laws and Producer shall own all right, title and interest therein.

ECF No. 21-3 ¶ 6.

Fourth, the Agreements contained "No Obligation to Use" provisions which expressly provided that Defendants were not obligated to use, produce, release, or distribute the Series. ECF No. 21-1 ¶ 22; ECF No. 22-2 ¶ 22; ECF No. 21-3 ¶ 8.

Fifth, the Walker Agreements contain a provision that allowed Defendants "the right to use, alter, add to, take from and otherwise change the [show] in any manner that [Defendants] may determine, in [their] sole discretion." ECF No. 21-1 ¶ 17; ECF No. 22-2 ¶ 17.

Lastly, the Contractor Agreement contained an arbitration clause, which provided that "any controversy or claim arising out of or relating to [the Contractor Agreement], including the scope or applicability of this Agreement to arbitrate, or the breach of any term hereof, cannot be settled through direct discussions, the parties agree to endeavor to settle the controversy or claim by binding confidential arbitration." ECF No. 21-3 ¶ 18.

To summarize, the Walker Agreements contain the following pertinent provisions: (1) a merger clause which makes written statements in the contract complete and binding, thus superseding any prior oral or written statements; (2) release clauses that limit Plaintiffs' ability to sue; (3) provisions making Defendants owners of all copyrights arising out the of the work; (4) provisions indicating that Defendants have no obligation to use, produce, or distribute the Plaintiffs' series; and (5) provisions allowing Defendants to edit the show as they see fit. The Contractor Agreement (the agreement with DL Synergy, LLC, which is Lucy and Darren Walker's company) contains nearly identical clauses, and also has an additional arbitration clause.

In 2023, Defendants contacted vendors for discounts in exchange for promotional airtime on Plaintiffs' show, and some vendors agreed. *Id.* ¶ 36. On May 1, 2023, Plaintiffs began filming the show with Defendants and Defendants' contractors. *Id.* ¶ 37. Plaintiffs allege that Defendants told them they would have editorial input. *Id.* ¶ 38. However, Plaintiffs did not see their requested edits of the show and were also unable to give creative input. *Id.* Defendants focused on storylines other than Darren and Lucy Walker's identity as a Black man and Latinx woman,

respectively, which Plaintiffs claim was "not cultural[ly] authentic" to New Orleans. *Id.* ¶ 39. Despite Plaintiffs' request, Defendants refused to show an edit of the show to Plaintiffs until after Defendants cancelled their show. *Id.* ¶ 40. When Plaintiffs did eventually view the pilot, the edit did not show scenes Plaintiffs felt strongly about filming, nor did it feature the previously agreed upon product placement of Zoey's Queso. *Id.*

Separate and apart from Defendants' negotiations and contracts with Plaintiffs, Defendants maintained a contractual relationship with a show titled "Bargain Block," a home restoration television show which was previously based in Detroit. Compl. ¶¶ 33–34. In 2023, Defendants moved "Bargain Block" to New Orleans, and Plaintiffs allege that Defendants were aware that the show was similar to Plaintiffs' work. *Id.* ¶¶ 34–35. Defendants did not disclose information about the new "Bargain Block" show to Plaintiffs. *Id.* ¶ 35.

Plaintiffs now appear to allege that Defendants painted Plaintiffs negatively as a way to make the competing show "Bargain Block" more appealing to networks. *Id.* ¶ 41. Plaintiffs point to the removal of scenes about cultural significance of their personal identities as evidence. *Id.* ¶ 42. Plaintiffs also allege that in 2024, during the editing of their show, Defendants instructed Plaintiffs' editor to deliver a quick and unusable edit that was not marketable. *Id.* ¶ 43. In short, Plaintiffs allege that Defendants used their identities and connections to develop the concept of a New Orleans show, only to then cancel their show and use a show that featured an all-white cast. *Id.* ¶ 49.

On August 27, 2024, Plaintiffs filed this action against Defendants for breach of implied contract, fraudulent inducement, dilution, unfair competition, violations of General Business

Law § 349, constructive trust, and a breach of fiduciary duty.[4] Compl. ¶¶ 52–86. On November 22, 2024, Defendants filed the instant motion to dismiss. ECF Nos. 19, 20 ("Mem."), 21. Plaintiffs filed an opposition along with several declarations and additional exhibits, none of which was originally included in, or referenced by, the complaint. ECF Nos. 26, 27 ("Opp."). At the parties' request, the Court thereafter stayed discovery pending disposition of this motion. ECF No. 32.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

---

[4] The Complaint, in its opening paragraph, appears to allege that Defendants subjected Plaintiffs to a "hostile work environment." Compl. ¶ 1. However, Plaintiffs do not plead this as a separate cause of action, or otherwise make any further reference to this assertion. The Court therefore does not construe the Complaint as alleging a hostile work environment claim under either federal or state law.

## DISCUSSION

The Court first finds that the affidavits and exhibits submitted by Plaintiffs in their opposition to the motion to dismiss are improper and will therefore not be considered in ruling on the instant motion to dismiss. The Court next concludes that Plaintiffs have failed to plead fraudulent inducement, and as a result, they cannot avoid the effects of the plain language of the Agreements. Finally, the Court finds that the release clauses in the Agreements are unambiguous and therefore enforceable, and operate so as to bar all of Plaintiffs' claims. Plaintiffs are denied leave to amend.

### I.    Plaintiffs' Opposition Affidavits and Exhibits Will Not Be Considered

The Court first addresses, as a preliminary matter, Plaintiffs' attempt to supplement, and therefore essentially amend, their operative complaint by submitting affidavits (and accompanying exhibits) in conjunction with their opposition to the motion to dismiss. ECF No. 26. A district court's adjudication of a 12(b)(6) motion generally shall "not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (cleaned up); *accord Richards v. Warner Music Grp.*, No. 22-CV-6200 (DEH), 2024 WL 4307994, at *3 (S.D.N.Y. Sept. 26, 2024) (refusing to consider declarations submitted by the plaintiffs in connection with their opposition).

Here, the affidavits do not fall into any of the above categories. They are not "documents" or "materials" referenced in, quoted in, or attached to, the complaint. *Cf. DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) (finding complaint incorporated by reference emails where plaintiff "referred in her complaint to [the] e-mails"). Nor are they

matters of public record of which the Court can take judicial notice. Rather, they are entirely new facts and allegations that Plaintiffs could have, but neglected to, allege in their Complaint.

The Court therefore declines to consider these materials and the allegations contained in them, and restricts itself (and the following analysis) only to the facts as summarized above. *See Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021) ("[N]ew facts and allegations, first raised in a [p]laintiff's opposition papers, may not be considered in deciding a motion to dismiss.") (internal citation and quotation marks omitted); *Streit* v. *Bushnell*, 424 F. Supp. 2d 633, 639 n.3 (S.D.N.Y. 2006) (noting that the law is clear that "[a] complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss or for summary judgment.").

## II.    Plaintiffs' Claims Are Barred by the Agreements

Defendants seek dismissal of all of Plaintiffs' claims arguing that the Walker and Contractor Agreements contained release clauses that expressly barred such claims. Mem. at 6–8. Plaintiffs disagree, arguing that release and merger clauses like those contained in the Agreements are not enforceable where, as alleged here, the agreement was fraudulently procured or induced. Opp. at 7–10.

Importantly, Plaintiffs *do not* dispute (and therefore concede) that they actually signed and executed the Agreements, and that the release clauses, if valid, *would* bar most of their claims. The only remaining questions, therefore are (1) whether Plaintiffs have stated a claim that the Agreements were fraudulently induced or procured; and (2) if not, the extent to which the release clause bars Plaintiffs' claims. As set forth below, the Court finds that Plaintiffs have

not sufficiently alleged the Agreements were fraudulently induced or procured. The Court then determines that the release clauses unambiguously bar all of Plaintiffs' claims.[5]

### A. No Fraudulent Inducement of the Agreements

Where a party is fraudulently induced to execute a release provision, the defrauded party may void the release. *RBS Holdings, Inc. v. Wells Fargo Century, Inc*., 485 F. Supp. 2d 472, 479 (S.D.N.Y. 2007); *see Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (noting that a release may be invalidated for any of "the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake") (internal citation omitted). A plaintiff seeking to invalidate a contractual release based on fraudulent inducement must "establish the basic elements of fraud, namely a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 (internal citation omitted); *see also 651 Bay St., LLC v. Discenza*, 137 N.Y.S.3d 374, 377 (2020) (articulating elements of fraudulent inducement claim).

In addition, Plaintiffs must also satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The plaintiff is required to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

---

[5] As set forth below, because the Court finds that the release clauses are valid and enforceable, the Court does not address the issue of whether the merger clauses would bar the oral promises Plaintiffs claim they received from Defendants. This is so because even if the merger clause did not cover the specific promises references, the release clause would nonetheless bar any implied in fact or quasi contract claims based on those promises because it concerns the same subject matter as the Agreements.

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal citation omitted). Failure to satisfy the Rule 9(b) standard is grounds for dismissal. *Id*. at 292–93.

Here, Plaintiffs allege that Defendants fraudulently induced them into signing the Agreements by assuring them (1) the Series would be unique and that there was no competing project in development; (2) that Defendants would pursue other distribution avenues, including streaming platforms, a network did not pick up the pilot; and (3) that Plaintiffs would have creative input and editorial control over the Series. Opp. at 8; *see* Compl. ¶¶ 26, 27, 33–35, 38, 56–60. None of these allegations suffice to establish fraudulent inducement.

Regarding Defendants' alleged failure to disclose their relationship with Bargain Block, this amounts to an omission of fact, not an affirmative material representation. While a fraudulent inducement claim may be based on an omission of fact, this requires an allegation that "the defendant had a duty to disclose material information and that it failed to do so." *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 421 (S.D.N.Y. 2018) (citing *Gomez-Jimenez v. N.Y. Law Sch.*, 956 N.Y.S.2d 54, 60 (1st Dep't 2012)). But Plaintiffs have not alleged, beyond conclusory assertions, the existence of any kind of special or fiduciary relationship. Rather, the allegations reflect the circumstances of parties engaged in arm's length commercial transactions and negotiations. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (finding no fiduciary duty given arm's-length nature of the parties' relationship and express disclaimer in governing agreement that neither party was the agent, partner, employee, or representative of the other).

Plaintiffs' allegations regarding Defendants' exclusivity promises similarly fail to indicate any fraudulent inducement because they do not satisfy Rule 9(b)'s particularity requirements. The Complaint does not allege the time, place, speaker(s), or substance of any such

conversations or communications. *In re IBM Arb. Agreement Litig.*, No. 21-CV-6296 (JMF), 2022 WL 2752618, at *11 (S.D.N.Y. July 14, 2022), *aff'd*, 76 F.4th 74 (2d Cir. 2023) (denying leave to amend fraudulent inducement claim where allegations failed to comply with Rule 9(b) specificity requirements and collecting cases regarding the same).

Even if Plaintiffs could address these shortcomings, they would fail to state a claim with respect to the element of reasonable or justifiable reliance. "A party's reliance is not reasonable where it is directly contradicted by a contractual provision." *CapLOC, LLC v. McCord*, No. 17-CV-5788 (ATR), 2018 WL 3407708, at *10 (S.D.N.Y. June 12, 2018). Here, each of the alleged promises (and non-disclosures) that Plaintiffs point to are specifically refuted in the parties' Agreements. For instance:

- The Agreements contained express "No Obligation to Use" provisions which noted that Defendants were not obligated to use, produce, release, or distribute the Series. ECF No. 21-1 ¶ 22; ECF No. 22-2 ¶ 22; ECF No. 21-3 ¶ 8. This contradicts any promise about other distribution avenues.

- The Walker Agreements contained provisions giving Defendants the right to "use, alter, add to, take from and otherwise change the [show] in any manner that [Defendants] may determine, in [their] sole discretion." ECF No. 21-1 ¶ 17; ECF No. 22-2 ¶ 17. All of the Agreements also contained provisions making Defendants sole copyright owners. ECF No. 21-1 ¶ 17; ECF No. 21-2 ¶ 17; ECF No. 21-3 ¶ 6. This contradicts any promise about creative or editorial control.

- The Agreements provided that Plaintiffs were being engaged as independent contractors and workers for hire. ECF No. 21-1 ¶ 24; ECF No. 22-2 ¶ 24; ECF No. 21-3 ¶ 15. This contradicts any suggestion of a special or fiduciary relationship.

In light of these unambiguous provisions, Plaintiffs' continued reliance on earlier promises was therefore not reasonable or justifiable. *See Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 284 (S.D.N.Y. 2017) (dismissing counterclaim for fraudulent inducement where statements were contradicted by written contract, and therefore reliance was unreasonable); *Herrick v. Grindr*, *LLC*, 306 F.Supp.3d 579, 596 (S.D.N.Y. Jan. 25, 2018) (holding that reliance is "unreasonable as a matter of law where the alleged inference or misrepresentation is contradicted directly by another statement" or by a "specific representation in [a] document.").

Ultimately, the Agreements contradicted, in express terms, earlier negotiations and alleged promises between the parties. And even if the echoes of earlier conversations persisted in Plaintiffs' minds, they remained "under an obligation to read [the] document before signing it, and cannot generally avoid the effect of the document on the ground that [they] did not read it or know its contents." *Israel v. Progressive Cas. Ins. Co*., 202 N.Y.S.3d 359 (2d Dep't 2023); *see also Anderson v. Dinkes & Schwitzer, P.C.*, 56 N.Y.S.3d 127, 129 (2d Dep't 2017) (same) (citation omitted). Nor is this a case where Plaintiffs have alleged any impediment to understanding the Agreements' terms due to, e.g., illiteracy, blindness, or having the material of the contract misrepresented to them. *Cf. Anderson*, 56 N.Y.S.3d at 129 ("Generally, a cause of action alleging that the plaintiff was induced to sign something different from what he or she thought was being signed only arises if the signer is illiterate, blind, or not a speaker of the language in which the document is written.").

The Court therefore dismisses Plaintiffs' fraudulent inducement claim and concludes that there is no basis to disregard the release provisions in the Agreements. *See Davis v. Rochdale Vill., Inc*., 971 N.Y.S.2d 340, 341 (2d Dep't 2013) (finding that trial court should have granted

motion to dismiss, based on release clause, where plaintiff "failed to demonstrate that there was

fraud, duress, or some other fact sufficient to void the release."); *Martino v. Kaschak*, 617

N.Y.S.2d 529, 530 (2d Dep't 1994) (affirming dismissal of complaint based on release clause in

agreement and observing that "a party who signs a release without any valid excuse for having

failed to read it is conclusively bound by its terms.").

### B. Breadth of the Release Clauses

Having now determined that Plaintiffs' fraudulent inducement claim fails as a matter of

law, the Court next considers the extent to which Plaintiffs' claims are barred by the release

clauses. The Court looks to, and applies, New York contract principles of interpretation and

construction in determining the scope of the release clause.

"The fundamental, neutral precept of contract interpretation is that agreements are

construed in accord with the parties' intent, [and that] [t]he best evidence of what parties to a

written agreement intend is what they say in their writing." *Greenfield v. Philles Records*, 98

N.Y.2d 562, 569 (2002) (internal citations omitted). "[A] written agreement that is complete,

clear and unambiguous on its face must be enforced according to the plain meaning of its terms."

*MHR Cap. Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009) (internal citation omitted).

"Whether a contractual term is ambiguous must be determined by the court as a matter of law,

looking solely to the plain language used by the parties within the four corners of the contract to

discern its meaning and not to extrinsic sources." *Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 948

N.Y.S.2d 292, 297 (1st Dep't 2012).

Here, the Court finds that the release clauses expressly bar all of Plaintiffs' claims.

Plaintiffs appear to point to pre-contract promises to challenge the meaning of the contracts.

However, "[r]esort to parol evidence or other extrinsic evidence—including exchanges between

the contracting parties during the course of negotiations, as well as post-execution conduct of the parties in performing the contract . . . is only permitted upon a finding of ambiguity in the contract in the first instance." *Barshay v. Naithani*, No. 20-CV-8579 (KPF), 2023 WL 2051170, at *8 (S.D.N.Y. Feb. 16, 2023), *aff'd*, No. 23-382, 2023 WL 8708424 (2d Cir. Dec. 18, 2023) (cleaned up). But there is nothing ambiguous about the release clauses: they release Defendants, and all their related and associated entities, from "**any and all claims, actions**, damages, liabilities, losses, costs, and expenses . . . arising out of or resulting from [Plaintiff Lucy and Darren Walker's] **participation in the Series and/or services rendered in connection therewith** . . . ." ECF No. 21-1 ¶ 20 (emphasis added); *see also* ECF No. 21-2 ¶ 20; ECF No. 21-3 ¶¶ 11–12. In these circumstances, it is permissible for the Court to enforce the clause as written. *See 2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Cap. LLC*, No. 00-CV-5773 (GEL), 2001 WL 410074, at *6 (S.D.N.Y. Apr. 23, 2001) (noting that "[i]t is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous."); *Barshay*, 2023 WL 2051170, at *9 (collecting cases where New York courts have enforced broad releases on motions to dismiss).

Plaintiffs still argue, however, that the release clauses do not bar their implied contract claim because they arise from conduct and representations that are not captured by the written agreements. Opp. at 12–15. To be sure, an implied in fact contract may arise where it involves different subject-matter than a written agreement. However, it is equally established that "a contract cannot be implied in fact where . . . there is an express contract covering the subject-matter involved." *Betty, Inc. v. PepsiCo, Inc*., 283 F. Supp. 3d 154, 167 (S.D.N.Y. 2017) (quoting *Miller v. Schloss*, 218 N.Y. 400, 406–07 (1916)). The basis for Plaintiffs' claimed implied contract is that Defendants "impliedly agreed to work exclusively with Plaintiffs to develop the

series." Opp. at 14. But this contention is directly contradicted by the parties' Agreements, as described above. And, in any event, this claim plainly involves matters "arising out of or resulting from" participation in the series or services rendered in connection therewith as contemplated by the release clauses. The same "series" mentioned in the opposition is the same "series" referenced in the Agreements. The Complaint does not allege that Plaintiffs worked with Defendants for any purpose other than producing the series. And none of the authority cited by Plaintiffs provides any basis to exclude the implied contract claim from the broad releases.

Because the release clauses unambiguously cover Plaintiffs' implied contract claim, and because Plaintiffs do not argue, or otherwise assert, that their other claims are not barred by the release clause, Defendants' motion is granted. *See Patterson v. Calogero*, 56 N.Y.S.3d 324 (2d Dep't 2017) (affirming dismissal of claims barred by release clause where plaintiff failed to allege the release "was induced by a separate fraud from the subject of the release.") (citing *Centro Empresarial Cempresa S.A. v. Am. Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011)).

## III.     Plaintiffs Are Denied Leave to Amend

Plaintiffs ask the Court to deny the motion to dismiss, or, in the alternative, to "deem the Complaint amended to conform with the proof attached to the Declaration of Plaintiff Darren Walker, the affidavits of Plaintiffs Lucy and Darren Walker and the exhibits referenced in this Memorandum of Law." Opp. at 3. To be sure, the Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be

a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, an amendment incorporating the allegations from the belatedly attached affidavits would do nothing to salvage the fraudulent inducement claim or call into question the validity of the release clauses. The affidavits, for instance, still lack any mention of the time, place, speaker, or nature of the alleged promises it constantly refers to. Rule 9(b)'s particularity requirements would therefore remain unsatisfied.

The fact also remains that the executed Agreements expressly contradict the alleged promises, and so Plaintiffs still fail to establish any reasonable reliance to support a fraudulent inducement claim. And Plaintiffs have not alleged or indicated the existence of any facts or evidence, beyond those contained in the belated affidavits, that would support their claims. Accordingly, the Court denies Plaintiffs leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate ECF No. 19 and to close this case.

Dated:  September 29, 2025
        New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge